## PAN-ATLANTIC STEAMSHIP CORP. *v.* ATLANTIC COAST LINE RAILROAD CO. ET AL.

No. 408.  Argued April 23, 1957.—Decided June 3, 1957.

*David G. Macdonald* argued the cause for appellant in No. 408.  With him on the brief were *Russell S. Bernhard* and *Warren Price, Jr.*

*James A. Murray* argued the cause for appellant in No. 424.  With him on the brief was *Robert W. Ginnane*.

*Charles H. Weston* argued the cause for the United States, appellee. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Hansen.*

*William Q. Keenan* argued the cause for the Atlantic Coast Line Railroad Co. et al., appellees. With him on the brief were *Anthony P. Donadio, Charles T. Abeles, James A. Bistline, Carl Helmetag, Jr.* and *Prime F. Osborn, III.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Section 311 (a) of the Interstate Commerce Act, 49 U. S. C. § 911 (a), gives the Commission power to grant "temporary authority" to a common carrier by water or a contract carrier by water to institute service for which "there is an immediate and urgent need." And the section provides that the temporary authority "shall be valid for such time as the Commission shall specify, but not for more than an aggregate of one hundred and eighty days."

Section 9 (b) of the Administrative Procedure Act, 5 U. S. C. § 1008 (b), provides that "In any case in which the licensee has, in accordance with agency rules, made timely and sufficient application for a renewal or a new license, no license with reference to any activity of a continuing nature shall expire until such application shall have been finally determined by the agency."

The question in the case is whether this provision of the Administrative Procedure Act authorizes the Commission to extend a temporary authority granted under § 311 (a) of the Interstate Commerce Act for more than 180 days.

On May 5, 1955, Pan-Atlantic filed with the Commission an application for a permanent certificate of public convenience and necessity as a common carrier by water.

The Commission, upon finding an immediate and urgent need for the service, issued on May 18, 1955, to Pan-Atlantic temporary authority to operate as a common carrier by water between various ports of the United States for a period of 180 days. The Commission did not conclude the proceedings on the application before the expiration of the 180-day period. Accordingly, prior to the expiration of the 180-day period and on application by Pan-Atlantic, it authorized Pan-Atlantic to continue to perform the water carrier service authorized by the temporary authority until further order of the Commission, but not beyond the time the application for a permanent certificate had been finally determined. The appellees, who are seven railroads, opposed this extension before the Commission and then instituted this suit in the District Court to vacate the Commission's order which authorized the continuance of the temporary authority beyond the 180-day period.

The District Court held for the appellees, 144 F. Supp. 53, feeling bound by the prior decision of that court in *Stone's Express, Inc.* v. *United States,* 122 F. Supp. 955,[1] though two of the three judges indicated that were *stare decisis* not to control, they would sustain the Commission. 144 F. Supp., at 54. The case is here by appeal. 28 U. S. C. § 1253. We noted probable jurisdiction. 352 U. S. 914.

We sustain the Commission in its assertion of authority to extend this temporary authority beyond 180 days.

"License" as used in the Administrative Procedure Act includes "the whole or part of any agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." § 2 (e). A temporary authority granted under § 311 (a) of the

---

[1] That case became moot after probable jurisdiction had been noted by this Court. See 350 U. S. 906.

Interstate Commerce Act would seem to be a "permit" or "certificate" under the Administrative Procedure Act. "Licensee," as used in the sentence of § 9 (b) which we have quoted, would seem, therefore, to include one who holds a temporary permit under § 311 (a). It is argued that "license" in that section includes only those that are permanent. But we see no justification for that narrow reading. A permit for 180 days covers an "activity of a continuing nature."

Section 9 (b) of the Administrative Procedure Act is a direction to the various agencies. By its terms there must be a license outstanding; it must cover activities of a continuing nature; there must have been filed a timely and sufficient application to continue the existing operation; and the application for the new or extended license must not have been finally determined.

Each of these conditions is satisfied in the present case; and we see no reason why the provisions of this later Act may not be invoked to protect a person with a license from the damage he would suffer by being compelled to discontinue a business of a continuing nature, only to start it anew after the administrative hearing is concluded. That has been the Commission's consistent construction of the law; [2] and we think it is the correct one. Section 9 (b) of the Administrative Procedure Act contains a new rule that supplements the prior authority granted by § 311 (a) of the Interstate Commerce Act. Initially, the Commission can do no more than issue a temporary authority good for 180 days. But once the conditions of § 9 (b) are satisfied, an extension in the interests of economy and efficiency is authorized.

The Commission advises us that the combined time required for the administrative proceedings on an appli-

---

[2] See 13 Fed. Reg. 4150 for the rules of the Commission governing these extensions.

cation for a certificate and for judicial review almost inevitably exceeds 180 days. Courts have no authority to issue these permits. See *United States* v. *Carolina Carriers Corp.,* 315 U. S. 475, 489–490. Unless the authority is vested in the Commission by § 9 (b), the operation, no matter how essential or necessary, must be discontinued at the end of 180 days. We think such a reading of the law would mutilate the administrative system which Congress created by the two Acts. Where the remedy for an evil is clear, the remedial provisions of the Administrative Procedure Act should be given full effect. See *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, 41. We conclude that an harmonious reading of § 311 (a) and § 9 (b) requires the latter to be read as supplementing the former and to be construed as applying to temporary as well as to permanent licenses.

*Reversed.*

MR. JUSTICE BURTON, whom MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER join, dissenting.

A major purpose of the Interstate Commerce Act is to prevent evils deemed to result from ease of entry and overcompetition in the transportation industry. *American Trucking Assns., Inc.* v. *United States,* 344 U. S. 298, 312–313. Accordingly, the Act prohibits new carrier operations except after notice to affected parties, an evidentiary hearing, administrative findings as to the public convenience and necessity of the proposed service, and court review of the administrative determination. See 49 U. S. C. §§ 306–308, 309. Sections 210a (a)[1]

---

[1] 52 Stat. 1238, as amended, 49 U. S. C. § 310a (a). Section 210a was enacted in 1938 as an amendment to the Motor Carrier Act of 1935.

(applying to motor carriers), and 311 (a)[2] (applying to water carriers) of the Act are narrow exceptions to this fundamental policy. They permit the Interstate Commerce Commission, "in its discretion and without hearings or other proceedings," to grant temporary authority for carrier service for which there is "an immediate and urgent need" and within territory having no carrier service "capable of meeting such need." Any grant of temporary authority is expressly made subject to an unconditional maximum time limit of 180 days.

> "Such temporary authority shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter." 49 U. S. C. § 911 (a). See also, § 310a (a).

Congress was concerned with situations in which temporary authority might be needed on an emergency basis to meet specific transportation problems. However, it plainly was aware that the over-all purpose of the Act would be jeopardized unless the Commission's power to authorize temporary carrier operations was severely limited. The intent of Congress was unmistakable. In recommending the enactment of § 210a (a), the Interstate Commerce Commission itself said:

> "Cases arise, and have been brought to our attention, where urgent need for interstate motor carrier service suddenly develops. The bringing in of oil wells in a new field and conditions created by a flood or other calamitous visitation are good examples, and there are others.

---

[2] 54 Stat. 943, as amended, 49 U. S. C. § 911 (a). Section 311 was enacted in 1940 as part of the Water Carrier Act of that year. It is an almost exact counterpart of § 210a.

"We believe that the Commission should have power to meet such emergencies by a grant of temporary operating authority, in its discretion and without hearings or other proceedings. *It is recognized that care would be necessary to protect the legitimate interests of other carriers . . . . [T]he authority granted would be strictly limited in time by the terms of the proposed amendment."* (Emphasis supplied.) S. Doc. No. 154, 75th Cong., 3d Sess. 2–3.

Congress realized that in many of the situations qualifying for temporary authority under §§ 210a (a) and 311 (a) permanent authority might later be required. The "bringing in of oil wells in a new field," as well as other situations, might require the granting of permanent authority following the hearing required by the Act. In such situations, §§ 210a (a) and 311 (a) operated as an incentive to the Commission to reach its final decision with respect to the granting of permanent authority within 180 days.

Thus, two policies underlie §§ 210a (a) and 311 (a): (1) providing the Commission with discretionary power to handle emergency situations by granting a severely limited temporary authority; and (2) prodding the Commission to finish, within 180 days, its determination with respect to the granting of permanent authority for this service. The Court, by now holding that § 9 (b) of the Administrative Procedure Act, 60 Stat. 242–243, 5 U. S. C. § 1008, authorizes the Commission to extend a temporary authority for more than 180 days, eliminates the second policy and makes the 180-day limitation meaningless. I do not believe that Congress intended § 9 (b) of the Administrative Procedure Act to accomplish this result.

The Administrative Procedure Act, enacted in 1946, was designed to promote general fairness and regularity

in administrative action. Section 9 (b) partakes of this purpose by requiring administrative agencies to act on license applications with reasonable dispatch and "with due regard to the rights or privileges of all the interested parties or adversely affected persons." It also protects persons who have received licenses from their summary revocation, and from the hardships occasioned by expiration of a license before the licensing agency has been able to pass upon its renewal.[3] It makes no reference to emergency permits restricted to a specific number of days.

The third sentence of § 9 (b) merely provides that if a licensee has made timely application for "a renewal or a new license, no license with reference to any activity of a continuing nature" shall expire prior to final administra-

---

[3] Section 9 (b) of the Administrative Procedure Act, in its entirety, reads as follows:

"SEC. 9. . . .

.        .        .        .        .

"(b) LICENSES.—In any case in which application is made for a license required by law the agency, with due regard to the rights or privileges of all the interested parties or adversely affected persons and with reasonable dispatch, shall set and complete any proceedings required to be conducted pursuant to sections 7 and 8 of this Act or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or annulment of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements. In any case in which the licensee has, in accordance with agency rules, *made timely and sufficient application for a renewal or a new license, no license with reference to any activity of a continuing nature shall expire* until such application shall have been finally determined by the agency." (Emphasis supplied.)

tive action on such application. The word "renewal" obviously relates to the license already held and is inapplicable here. The legislative history indicates that the other words which might apply, "new license," refer to a new license of the same type or class as that already held.[4]

In this case, the expiration of appellant Pan-Atlantic's 180-day *temporary authority,* issued to cover an emergency situation while its application for *permanent authority* is pending, does not come within the terms of § 9 (b) since the permanent license sought is not of the same type and class as the old license. The Court's contrary conclusion can be reached only by reading the word "license" as used in the third sentence of § 9 (b) in two different senses—first, as referring to a temporary license, and, second, as referring to a permanent license. The improbability of this interpretation is emphasized by policy considerations stemming from both the Administrative Procedure Act and the Interstate Commerce Act.

The policy behind the third sentence of § 9 (b) is that of protecting those persons who already have regularly issued licenses from the serious hardships occasioned both

---

[4] The third sentence of § 9 (b) was taken from a similar provision "contained in the licensing procedure act of the State of Ohio (Act of June 3, 1943, sec. 1 amending secs. 154–167 of the General Code; Amended substitute Senate bill No. 36)." Legislative History, Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess. 35. The Ohio statute expressly applied only to "a new license of the same type or class, or renewal of an existing license . . . ." 120 Ohio Laws 1943–1944, Administrative Procedure Act, § 154–67. Cf. *Stone's Express, Inc.* v. *United States,* 122 F. Supp. 955.

The words "new license" were used in addition to the word "renewal" because some federal agencies issue licenses for a limited term. Licenses for operation of broadcasting stations, which cannot be granted "for a longer term than three years," are an example. See § 307 (d) of Communications Act of 1934, 48 Stat. 1084, as amended, 47 U. S. C. § 307 (d).

to them and to the public by expiration of a license before the agency finds time to pass upon its renewal. As the initial license was obtained after a hearing at which all interested parties had an opportunity to be heard, § 9 (b) operates to protect valuable existing rights and avoids unnecessary injury resulting from administrative delay. So applied, it does not prejudice the rights of others since they had a chance to be heard on the initial application, and can be heard on the renewal. However, the issuance of temporary authority to Pan-Atlantic in the instant case was done *ex parte* in order to meet an alleged emergency need. Affected parties had no opportunity to contest it. Moreover, Pan-Atlantic knew that the license was issued for a maximum period of 180 days and must have accepted it on that basis. To convert such temporary and limited rights into rights continuing until the Commission, without any time limit on doing so, finally acts on Pan-Atlantic's application for permanent authority deprives licensed competitors and other affected parties of their rights under the Interstate Commerce Act, without any hearing on the issues involved.

Temporary authorities are issued *ex parte* and without regard to their competitive effects. Yet, if permitted to be outstanding for prolonged periods, they may produce competitive changes comparable to those produced by a grant of permanent authority. In this case, as in a high proportion of the instances in which the Commission has extended a temporary authority beyond 180 days, Pan-Atlantic's "temporary" service already has been in effect for more than two years.

The Interstate Commerce Act, for tested reasons of public policy, prohibits new carrier operations unless the applicant obtains a certificate of public convenience and necessity in a proceeding in which those adversely affected have an opportunity to be heard in opposition. Grants of temporary operating authority for the maximum period

of 180 days constitute a narrow exception to these requirements. Section 9 (b) of the Administrative Procedure Act should not be interpreted as wiping out this time limitation when the result conflicts with a fundamental objective of the National Transportation Policy.

There is a further incongruity if § 9 (b) is interpreted to apply to temporary operating authorities issued by the Interstate Commerce Commission. Section 9 (b) provides that "no license . . . *shall* expire until such application shall have been finally determined by the agency." (Emphasis supplied.) This language is mandatory. Although §§ 210a and 311 of the Interstate Commerce Act place the initial granting of temporary authority entirely in the Commission's discretion, the Commission would be compelled by § 9 (b) to extend the temporary authority in every case involving activity of a continuing nature until it formally completes the proceeding on the application for permanent authority. The result is to require the Commission to extend the temporary authority even though, in a particular case, it might be convinced that the temporary emergency service was no longer necessary.

Even if § 9 (b) is interpreted as extending temporary licenses during the pendency of permanent license proceedings, it should not be applied to the temporary authorities issued by the Interstate Commerce Commission under §§ 210a and 311 of the Interstate Commerce Act. Those sections are special statutes dealing in precise terms with a specific subject.[5]

---

[5] Repeals by implication are not favored. *United States* v. *Borden Co.,* 308 U. S. 188, 198–200; *United States* v. *Jackson,* 302 U. S. 628, 631. An earlier special statute controls over a later general statute. *Washington* v. *Miller,* 235 U. S. 422, 428; *Rodgers* v. *United States,* 185 U. S. 83, 87–88. Finally, § 12 of the Administrative Procedure Act, 60 Stat. 244, 5 U. S. C. § 1011, provides that "Nothing in this Act shall be held to . . . limit or repeal additional requirements imposed by statute or otherwise recognized by law."

In response to the claim that the Commission's construction of § 9 (b) should be given considerable weight, it must be noted that its interpretation was adopted largely as a matter of expediency rather than as a reasoned interpretation.[6]   Cf. *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140.   In any event, it is the duty of the Court to determine whether, as a matter of law, the general provisions of § 9 (b) of the Administrative Procedure Act override the express limitations placed by Congress upon the Commission by earlier provisions of the Interstate Commerce Act.[7]

For these reasons, I would affirm the judgment of the District Court.

---

[6] The public announcement of the Commission's interpretation of § 9 (b), published in September 1947, admitted that its interpretation was subject to question:

"There is a divergence of legal opinion on the question.   Some of the Commission's lawyers are of the opinion that an extension is authorized by Section 210a (a) of the Interstate Commerce Act; others are of the opinion that continuances of such operations are authorized by Section 9 (b) of the Administrative Procedure Act; while others doubt that either Section 9 (b) of the Administrative Procedure Act or Section 210a (a) of the Interstate Commerce Act or any other provision, either extends or authorizes the Commission to extend, these temporary authorities where they have been in effect for 180 days . . . ."   CCH Fed. Carriers Reporter ¶ 23,040.   In addition, the Commission has requested Congress to enact amendments to the Interstate Commerce Act which would be unnecessary if § 9 (b) of the Administrative Procedure Act meant what the Commission says it does.   I. C. C., 61st Ann. Rep. (1947), 148; I. C. C., 69th Ann. Rep. (1955), 132.

[7] Nor can the solution be found in the fact that the Commission has extended about 19% of all temporary authorizations beyond 180 days.   If in fact there exists "an immediate and urgent need" for service which no other carrier is capable of providing, 180 days is a sufficient time for final administrative determination of the question whether the service is required by public convenience and necessity. And even if it were not, the remedy would be legislative amendment of the Interstate Commerce Act, not administrative or judicial revision.