Milton J. SHUCK, d/b/a M. J. Shuck
Company, Petitioner,

v.

SECURITIES AND EXCHANGE COM-
MISSION, Respondent.

No. 14208.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 10, 1958.

Decided Dec. 4, 1958.

Mr. Milton Pollack, New York City, for petitioner.

Mr. Ellwood L. Englander, Special Counsel, Securities and Exchange Commission, with whom Mr. Thomas G. Meeker, General Counsel, Securities and Exchange Commission, was on the brief, for respondent.

Before PRETTYMAN, Chief Judge, and EDGERTON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition to review an order of the Securities and Exchange Commission, revoking petitioner Shuck's license as a broker-dealer. The principal questions presented relate to the interpretation to be given Section 9(b) of the Administrative Procedure Act,[1] and to the merits of the Commission's action.

In September 1956 the Securities and Exchange Commission obtained a preliminary injunction against Shuck in the District Court for the Southern District of New York,[2] enjoining any further violations by Shuck of Section 15(c) (3) of the Securities Exchange Act of 1934,[3] and the Commission's rule thereunder with respect to net-capital requirements and aggregate indebtedness.[4] A few weeks thereafter, Shuck sent to the Commission written notice that he was about to close his office and thereby "withdraw from registration." The Commission refused to permit Shuck's notice of withdrawal from registration to become effective, and after appropriate notice, instituted proceedings before a hearing examiner to revoke Shuck's registration,

---

1. 60 Stat. 242 (1946), 5 U.S.C.A. § 1008 (b).

2. Securities and Exchange Commission v. Shuck, Civil No. 112–267, S.D.N.Y., Sept. 7, 1956.

3. Added by 49 Stat. 1378 (1936), as amended, 15 U.S.C.A. § 78o(c) (3).

4. Rule X–15c3–1, 17 C.F.R. § 240.15c3–1 (1949). The Rule, which is quite detailed, has a "General Provision" stating that "No broker or dealer shall permit his aggregate indebtedness to all other persons to exceed 2,000 per centum of his net capital."

pursuant to Section 15(b) of the Securities Exchange Act of 1934.[5] The Commission finally concluded that the license should be revoked. This petition followed.

## I.

The initial question presented is whether the Securities and Exchange Commission adequately complied with the requirements of Section 9(b) of the Administrative Procedure Act in its dealings with Shuck. Section 9(b) is a general provision, with primary impact on the regulatory agencies, including the Securities and Exchange Commission. The section makes any revocation of a license unlawful unless, prior to the agency proceedings therefor, the agency involved gives written notice to the licensee of the facts or conduct which may warrant the agency action, and also accords the licensee "opportunity to demonstrate or achieve compliance with all lawful requirements." The section provides for two exceptions to the requirements of written notice and opportunity for compliance: (1) in cases of wilfulness and (2) in cases in which the public interest requires otherwise.[6]

■ We need not reach the question whether the sequence of events in the present case fell within either of these exceptions to Section 9(b), for it is our opinion that the Commission adequately complied with the substantive requirements of the Section. Section 9(b) applies only to administrative proceedings. It had no application to the judicial proceedings against Shuck in the District Court, which were not brought for the revocation of any license, but rather were brought pursuant to specific statutory authority [7] with the object of protecting the investing public. Subsequently, of course, the Commission commenced administrative proceedings for the revocation of Shuck's license, but these proceedings were independent of the judicial proceedings. The Section 9(b) requirement of prior written notice was fulfilled in two ways: by the service upon the petitioner of the ex parte temporary restraining order and the complaint in the New York District Court action for a preliminary injunction,[8] and by the subsequent issuance of the preliminary injunction itself.[9]

■ The "written notice" called for by the statute need not include an express offer of "opportunity to demonstrate or achieve compliance with all lawful requirements." It is enough that such opportunity be "accorded," on some fair and reasonable basis. Here it was accorded in ample fashion. The record shows that prior to the court action the Commission's staff had on numerous occasions discussed with Shuck and his associates the matter of compliance with the Act and the Rules, in the very respects which formed the subject of the injunctive proceedings. Full opportunity was given to "demonstrate or achieve" compliance. No written notice of Shuck's shortcomings was sent at the time— though doubtless this would have been a wise measure. But such notice followed in due course, through the court proceedings. Those proceedings gave Shuck a further opportunity to achieve or demon-

5. Added by 49 Stat. 1377 (1936), 15 U.S. C.A. § 78o(b).

6. Section 9(b) provides, in pertinent part: "Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or annulment of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to dem-

onstrate or achieve compliance with all lawful requirements."

7. See Securities Exchange Act of 1934, § 21(e), 48 Stat. 900, as amended, 15 U.S.C.A. § 78u(e).

8. See Loss, Securities Regulation 736 (1951, Supp.1955).

9. Cf. American Air Transp. & Flight School, Inc., 2 Pike & Fischer Ad.L.2d 213, 216 (CAB 1952) (enforcement proceedings), 2 Pike & Fischer Ad.L.2d 733, 737 (CAB 1952) (revocation proceedings).

strate compliance. The Commission found, however, that this was never done, although on several occasions Shuck and his counsel had "represented" that the questioned transactions would be explained and that copies of the underlying documents would be furnished. The finding was not arbitrary or without basis in the evidence. The fundamental purposes of the statute were thus fully observed.[10]

## II.

◼ We turn to the merits of the case. The Commission based its revocation of Shuck's license on Section 15(b)(C) of the Securities Exchange Act of 1934, which provides for revocation when the Commission finds that the "revocation is in the public interest," and that the broker "is permanently or temporarily enjoined by order, judgment, or decree of any court of competent jurisdiction from engaging in or continuing any conduct or practice in connection with the purchase or sale of any security * * *."[11]

The petitioner contends that revocation was not authorized because (1) the injunction relied on was not an adjudication on the merits that there was then an existing violation of law; (2) there was no finding that a wilful violation of the law had occurred; and (3) the public interest did not require revocation.

The first contention is without merit. The injunction recites that Shuck "was engaged in and about to engage in acts and practices which constitute a violation of Section 15(c)(3) of the Securities Exchange Act of 1934, 15 U.S.C. 78o(c)(3) and * * * unless enjoined, will continue to engage in said acts and practices * * *." The court's memorandum opinion adds:

"The defendant does not deny the facts charged by the Commission [these included a charge that defendant was currently violating the net capital requirement] which constitute the violation sought to be restrained. The defendant merely contends he was too speedily hailed to court and urges that he will in the future comply with the Commission's rules. The contention is not supported by the admitted facts and I am not persuaded that the promise of future compliance is buttressed by his past record."

This adequately shows that the court found an existing violation of law. We do not think it necessary to reach the question whether such a finding is required by the statute.

◼ We turn to the argument that, to justify revocation of registration, the injunction must contain express findings of a "wilful" violation. Subsection (C) does not of course expressly so provide, and we agree with the view of the Securities and Exchange Commission that such a finding is not required for revocation under this subsection.[12] Subsections (A) and (D) of Section 15(b) specifically provide for wilfulness as a necessary element of the acts described therein. The omission of a reference to wilfulness as an element in Subsection (C) can therefore not be regarded as inadvertent. We may assume for present purposes that wilfulness would be regarded as a necessary element in the conviction for a felony or misdemeanor referred to in Subsection (B), although not specifically mentioned by that subsection, but it does not follow that wilfulness must be read

10. See Loss, op. cit. supra n. 8, at 737. And see Pan-Atlantic Steamship Corp. v. Atlantic Coast Line R. R., 1957, 353 U.S. 436, 77 S.Ct. 999, 1 L.Ed.2d 963.

11. Other grounds for revocation, provided it is in the public interest, are set out in three other subsections of Section 15 (b): (A) the wilful making of any false or misleading statement in any document relating to registration; (B) conviction for any felony or misdemeanor arising out of one's business as a broker; and (D) any wilful violation of any securities act or Commission regulation.

12. In addition to the present case, see Light, Wofsey & Benesch, Inc., 27 S.E.C. 763, 765 & n. 5 (1948).

in as an implied element under Subsection (C): an injunction may sometimes be based on acts not wilful in nature,[13] in contrast to conviction of a crime which would normally involve the element of wilful intention. Moreover, if wilfulness had been made a necessary element, Subsection (C) would have been in effect a superfluous provision, because with wilfulness as a component part of the violation, revocation could always be based on Subsection (D).[14] We can hardly impute to Congress the enactment of an unnecessary provision.

Thus, we conclude that a finding of wilfulness is not essential for revocation under Section 15(b) (C). But this is not to say that the Commission can revoke in every case where an injunction is procured. We think its action must be fair and just under all the circumstances, and lacking in any element of an arbitrary or capricious nature, as well as being in the public interest. The Commission itself appears to recognize this [15] and here it clearly conformed to this standard.

The question whether the licensee's conduct was wilful is, of course, a proper subject of consideration in applying the "public interest" criterion.[16] In the instant case, when the injunction and the court's opinion are read together, it is apparent that wilfulness may well have been the actual basis of the court's action.[17] And we note that the Commission's staff urged the Commission to revoke Shuck's license on the basis of Subsection (D)—claiming wilful violation of the law. The Commission declined to pass on this, saying that "the existence of the injunction against registrant itself clearly furnishes a statutory basis for revocation," and that there was no necessity for reaching the Subsection (D) problem. The refusal of the Commission to reach the question of wilfulness for purposes of Section 15(b) (D), however, does not mean that it failed to consider wilfulness for purposes of Section 15(b) (C). As part of its treatment of the requirement in Section 15(b) that the revocation of the license be "in the public interest," the Commission pointed

13. For example, an injunction might be granted against a broker on the ground of his insolvency, a condition not ordinarily to be described as "wilful." See footnote 15, infra.

14. If wilfulness were required to be a component of all violations under Section 15 (b), including Subsection (C), and if wilfulness were so found to exist, then of course there would be no problem of complying with the requirements of Section 9(b) of the Administrative Procedure Act, since in a case of wilfulness, no written notice or opportunity for compliance would be necessary. See Loss, op. cit. supra n. 8, at 736.

15. For example, in Harold Alton Meyer, 8 S.E.C. 632 (1941), a denial proceeding under Section 203(d) of the Investment Advisers Act of 1940, 54 Stat. 851, 15 U.S.C.A. § 80b–3(d), the injunction, upon which the proceeding had been based, had issued, after the respondent had become insolvent, in order to prevent any possible future violation of the antifraud provisions by his effecting transactions without disclosing his insolvency. The Commission refrained from denying the license. The reason for the

Commission's refusal to act was not because the injunction would not fulfill the criterion of Section 203(d) (2), the Investment Advisers Act's counterpart to Section 15(b) (C) of the Securities Exchange Act, but because under the circumstances the Commission did not consider that revocation was required under the "public interest" criterion of Section 203(d) the counterpart to Section 15(b). Cf. A. G. Scheidel & Co., 10 S.E.C. 1032 (1942).

16. See, generally, Loss, op. cit. supra n. 8, at 739–741. It may be noted that the enjoining courts in Securities and Exchange Commission v. Otis & Co., D.C. N.D.Ohio 1936, 18 F.Supp. 100, 101, affirmed, 6 Cir., 1939, 106 F.2d 579, and in Securities and Exchange Commission v. Torr, D.C.S.D.N.Y.1938, 22 F.Supp. 602, 612, have volunteered the view that if an injunction were obeyed, a revocation on the basis of that injunction would not be in the "public interest."

17. Cf. Food Fair Stores, Inc. v. Square Deal Market Co., 93 U.S.App.D.C. 7, 9, note 3, 206 F.2d 482, 484, note 3, certiorari denied, 1954, 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 426.

out that Shuck's actions for almost a year prior to the injunction demonstrated "at the least a lack of any real concern about the matter, and negative any conclusion that the August 22, 1956 deficiency in required net capital was unintentional or inadvert." This statement by the Commission appears to comport with the general definition of wilfulness which has been established for purposes of the other subsections of Section 15(b).[18] The Commission then said that the court's memorandum opinion and order "clearly indicate the Court's opinion that registrant had violated Section 15 (c) (3) of the Act in the past and would do so again in the future unless enjoined."

■■■ In this case, under all the circumstances, we think the Commission could properly find that revocation of Shuck's registration was in the public interest. The record clearly shows, if not wilfulness, at the very least Shuck's unwillingness or inability to maintain required standards for a long period in the past and a finding by the District Court that he would not maintain those standards in the future. The facts that Shuck wished to withdraw from business, or that he had satisfied his creditors as of that time, if true, are not sufficient to require the conclusion that revocation was not in the public interest. The Commission could properly find that his past and expected future violations justified revocation for the future protection of the investing public. The Commission could take this step without awaiting Shuck's possible re-entry into business: it could hold a hearing which would reflect the facts shortly after they had occurred, and take prompt and appropriate action.

For these reasons, we conclude that the Commission's order should be

Affirmed.

18. In Hughes v. Securities and Exchange Commission, 1949, 85 U.S.App.D.C. 56, 64, 174 F.2d 969, 977, we held that wilfulness for purposes of Section 15(b) (D) means " 'no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.' "