**GREAT WESTERN PACKERS EX-PRESS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Ringsby Truck Lines, Inc., Rocky Mountain Motor Tariff Bureau, Inc., Watson-Wilson Transportation System, Inc., Midwest Emery Freight System, Inc., Little Audrey's Transportation Co., Inc., and Midwest Coast Transport, Inc., Intervenors.**

**Civ. A. No. 9207.**

United States District Court
D. Colorado.

Sept. 15, 1965.

Singer & Hardman, Chicago, Ill., and Holme, Roberts, More & Owen and Richard L. Schrepferman, Denver, Colo., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Lawrence M. Henry, U. S. Atty., Denver, Colo., for defendant United States of America.

Robert W. Ginnane, Gen. Counsel, and Clarence William Vandergrift, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Jones, Meiklejohn, Kehl & Lyons and Alvin J. Meiklejohn, Jr., Denver, Colo., for intervenor Ringsby Truck Lines, Inc.

LeGrand A. Carlston and Z. L. Pearson, Jr., Denver, Colo., for intervenor Rocky Mountain Motor Tariff Bureau, Inc.

David Axelrod and Edward G. Bazelon, Chicago, Ill., and Z. L. Pearson, Jr., and LeGrand A. Carlston, Denver, Colo., for intervenors Watson-Wilson Transportation System, Inc., Midwest Emery Freight System, Inc., and Little Audrey's Transportation Co., Inc.

Donald L. Stern, Omaha, Neb., and Alvin J. Meiklejohn, Jr., Denver, Colo., for intervenor Midwest Coast Transport, Inc.

Before BREITENSTEIN, Circuit Judge, and ARRAJ and CHILSON, District Judges.

BREITENSTEIN, Circuit Judge.

This action was brought to enjoin and set aside the order of the Interstate Commerce Commission entered in Investigation and Suspension Docket No. M-19660, Fresh Meats and PHP via Thunderbird Freight Lines, Inc. We have jurisdiction under 28 U.S.C. § 1336 and hearing by a three-judge district court is required by 28 U.S.C. § 2325. The defendants and the intervenors have moved to dissolve the temporary restraining order heretofore issued and to dismiss the complaint.

The substance of the complaint is that between February 8 and June 14, 1965, the plaintiff in conjunction with J. B. Montgomery, Inc., and Milne Truck Lines, Inc., participated in the tariff of A. R. Fowler, Agent, naming through routes and joint rates for the transportation of meats and packing house products from Midwest origins to points in California. Each carrier handled a portion of the haul with Milne taking care of that between Arizona points and California. Pursuant to action by Milne, Fowler cancelled Milne from the tariff and at the same time added Thunderbird Freight Lines, Inc., as a participating carrier. The publication of the tariff adding Thunderbird was protested by Rocky Mountain Motor Tariff Bureau and the Commission's Board of Suspension suspended the operation of the tariff schedules for seven months and ordered an investigation of the lawfulness of the schedules. A petition to vacate the suspension order was denied by Division 2 of the Commission acting as an Appellate Division. These actions left plaintiff and Montgomery without means of completing the Arizona-California leg of the through route on a joint rate basis. Plaintiff applied for temporary authority covering the Prescott, Arizona-Los Angeles, California portion of the route and that authority was denied by the Temporary Authorities Board of the Commission. Plaintiff then filed this suit and obtained a temporary restraining order enjoining the suspension.

Section 216(g) of the Interstate Commerce Act, 49 U.S.C. § 316(g),[1] author-

---

1. Section 216(g) reads thus:

"(g) Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, charge, or classification for the transportation of passengers or property by a common carrier or carriers by motor vehicle, or by any such carrier or carriers in conjunc-

izes the Commission to suspend for seven months "a new individual or joint rate, fare, charge, or classification * * * or any rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder." The order of suspension reads in part:

"*It appearing,* That there have been filed with the Interstate Commerce Commission tariff schedules setting forth new reduced rates and charges, and new rules, regulations and practices affecting such rates and charges, applicable on interstate or foreign commerce, to become effective June 10, 1965, and later, designated as follows: [Here is set out the addition of Thunderbird Freight Lines, Inc., as a participating carrier in the pertinent Fowler tariff] * * *."

██ The grant or denial of suspension of a proposed rate is discretionary with the Commission and not judicially reviewable,[2] unless the action taken is in excess of the powers delegated to the Commission by statute.[3] The controlling issue is whether § 216(g) empowers the Commission to suspend under the facts here presented.

The sharply defined question is whether the participation by Thunderbird in the joint rate for the through route is a new rate, charge, rule, regulation or practice which § 216(g) empowers the Commission to suspend. Our attention is directed to no pertinent judicial decision.

██ Plaintiff relies on the fact that the rate was established prior to the participation by Thunderbird and argues that such participation did not make it a new rate. It is true that the rate remained the same but the withdrawal of Milne from the tariff changed the status. Motor common carriers of property may establish through routes and joint rates,[4] but no statute requires them, or authorizes the Commission to

tion with a common carrier or carriers by railroad and/or express, and/or water in interstate or foreign commerce, or any rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder, the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative at once and, if it so orders, without answer or other formal pleading by the interested carrier or carriers, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, fare, or charge, or such rule, regulation, or practice, and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, or charge, or such rule, regulation, or practice, but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after hearing, whether completed before or after the rate, fare, charge, classification, rule, regulation, or practice goes into effect, the Commission may make such order with reference thereto as would be proper in a proceeding instituted after it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, or charge, or classification, rule, regulation, or practice, shall go into effect at the end of such period: *Provided,* That this subsection shall not apply to any initial schedule or schedules filed on or before July 31, 1938, by any such carrier in bona fide operation on October 1, 1935. At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable."

2. See Arrow Transp. Co. v. Southern R. Co., 372 U.S. 658, 667–669, 83 S.Ct. 984, 10 L.Ed.2d 52; National Water Carriers Ass'n v. United States, S.D.N.Y., 126 F. Supp. 87, 90–91. These cases consider suspensions under § 15(7) of the Act, 49 U.S.C. § 15(7). The pertinent provisions of that section are substantially the same as those of § 216(g). See also Manhattan Transit Co., Inc. v. United States, D.C.Mass., 24 F.Supp. 174, 177–178.

3. Leedom v. Kyne, 358 U.S. 184, 190, 79 S.Ct. 180, 3 L.Ed.2d 210.

4. See § 216(c) of the Interstate Commerce Commission Act, 49 U.S.C. § 316(c).

require them, to do so. Hence, Milne was free to discontinue its participation in the three-line joint rate. After it did so the joint rate of the three carriers was no longer effective. Milne's action eliminated the through operation.

This controversy began when Thunderbird filed its participation in the Fowler tariff. The action of the Commission was the suspension of the tariff schedule covering the participation of Thunderbird in the through route and joint rate. This rate was new to Thunderbird. Additionally the action by Thunderbird created a new joint rate in that it created a rate which applied to a tri-partite movement participated in by plaintiff, Montgomery and Thunderbird. Before then the only way traffic could have moved over the routing of these carriers was by a combination rate.

 Section 216(g) not only authorizes the suspension of a new rate or charge but also the suspension of a regulation or practice affecting the rate or charge. If it be considered that the rate is not new because it is the same as that under which plaintiff and Montgomery were formerly operating with the participation of Milne, the addition of Thunderbird to the Fowler tariff was a regulation or practice affecting the joint rate.[5] The propriety of the joint rate for the three-line haul by plaintiff, Montgomery and Milne does not establish that the rate would be just, reasonable and lawful for the three-line haul of plaintiff, Montgomery and Thunderbird

because the existence of a joint rate for one group of carriers does not necessarily mean that the same rate would be proper for a different group.

 The Commission found that the tariff schedule filed for Thunderbird set forth new rates, regulations and practices. We agree. Accordingly, the suspension was within the power of the Commission under § 216(g). The Commission further found that reason existed to believe that if the schedule became effective, the result would be rates, regulations, and practices in violation of the Act. This was a discretionary determination which the courts have no power to overturn.

 The complaint also seeks to set aside the order denying plaintiff temporary authority to operate the western segment of the through route. The grant of temporary authority is covered by § 210a(a), 49 U.S.C. § 310a(a) [6] which makes the grant or denial of such authority discretionary with the Commission.[7] The court has no power to issue such a temporary authority.[8]

What we have said makes unnecessary the consideration of the other points raised by the parties. The temporary restraining order issued June 18, 1965, is vacated and the complaint dismissed. We are convinced that the facts are such that the filing of an amended complaint would add nothing new. Accordingly, the clerk shall forthwith enter judgment dismissing the case.

5. See Long Island Rail Road Company v. United States, E.D.N.Y., 193 F.Supp. 795, 800–801, holding that limitation of the effectiveness of a rate to one of a number of routes is a regulation or practice affecting a rate within the purview of § 15(7).

6. The material portion of the statute reads: "To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable

of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be."

7. See J-T Transport Company v. United States, W.D.Mo., 191 F.Supp. 593, 598.

8. See Pan-Atlantic S. S. Corp. v. Atlantic Coast Line R. Co., 353 U.S. 436, 440, 77 S.Ct. 999, 1 L.Ed.2d 963.