LLOYD CARR & CO., Lloyd Carr Financial Co., James A. Carr and Charles P. LeMieux III, Petitioners,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 444, Docket 77–4146.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1977.

Decided Dec. 30, 1977.

Barry H. Garfinkel, New York City (Skadden, Arps, Slate, Meagher & Flom, Leslie H. Arps, Daniel J. Piliero, III, Douglas M. Kraus, New York City, Bushnell, Gage & Reizen, George E. Bushnell, Jr., Noel A. Gage, Daniel J. Henry, Jr., Lynn Shecter, Southfield, Mich.), for petitioners.

Richard E. Nathan, Washington, D. C., (John G. Gaine, Frederic T. Spindel, Richard A. Levie, Thomas B. Goodbody, Washington, D. C.), for respondent.

Before FEINBERG, MANSFIELD, VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is a petition for review of an order of the Commodity Futures Trading Commission denying petitioners' application for a Futures Commission Merchant (FCM) license and directing them to cease and desist from further violations of the Commission's regulations. 17 C.F.R. § 32.1–32.-10 (1977). Petitioners are two partnerships, Lloyd Carr & Co. and Lloyd Carr Financial Co., and the individual partners, James A. Carr and Charles P. LeMieux III. Lloyd Carr Financial Co. was organized in 1976 by Carr and LeMieux for the purpose of selling commodity options. Lloyd Carr & Co., originally formed by Carr as a sole proprietorship, was reorganized in January 1977 as a partnership between Carr and LeMieux and received all of Lloyd Carr Financial's assets and business.

The commodity options market was sparsely regulated prior to the passage of the Commodity Futures Trading Commission Act of 1974.[1] The Act created the Commission and authorized it "to make and promulgate such rules and regulations as, in the judgment of the Commission, are reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes of this chapter." 7 U.S.C. § 12a(5). Regulations governing commodity option transactions were adopted by the Commission on November 24, 1976. Although several options dealers, including Lloyd Carr, sought to enjoin implementation of the regulations, they were unsuccessful. *See British American Commodity Options Corp. v. Bagley*, 552 F.2d 482 (2d Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977).

Two regulations are involved in this appeal. The first forbids options dealers from doing business after January 17, 1977 without having an FCM license, and prohibits a person associated with an options dealer from doing business after that date without registering as an associated person. 17

---

1. Pub. L. No. 93–463, 88 Stat. 1389, 7 U.S.C. §§ 2–22 (Supp. IV 1974) (amending the Commodity Exchange Act, 7 U.S.C. §§ 1–17a (1970)). See W. Greenstone, *The CTFC and Government Reorganization: Preserving Regulatory Independence*, 33 Bus. Law. 163 (1977) for an historical review of the futures market and the genesis of the Act.

C.F.R. § 32.3(b)(1)(i) and (ii). The second requires options dealers to maintain certain books and records, *id.* § 32.7(a)–(d), and "to produce the same for inspection . . . when and as requested by any authorized representative of the Commission . . .", *id.* § 32.7(e).

On October 1, 1976, Lloyd Carr applied for an FCM license.[2] The Commission found the application deficient and returned it twelve days later. In the months which followed, Lloyd Carr pursued its legal attack against the regulations but did not reapply for the license. It was not until January 17, 1977, the date upon which registration was required, that it submitted another application. On January 20, the Commission began an audit of the company's operations in order to determine whether it met the licensing requirements.[3]

During the audit, which took place on January 20 and 21, problems arose concerning the relationship of the assets of Lloyd Carr & Co. to those of Lloyd Carr Financial Co. At the suggestion of the Commission, a new application was filed on January 25 which consolidated all of the assets under the name of Lloyd Carr & Co. Thereafter, Lloyd Carr refused to permit the Commission to conduct a second audit by which it sought to determine if the requirements for the license had been met. Meanwhile, Lloyd Carr continued to operate its unlicensed business.

On February 3, the Commission began an administrative proceeding against petitioners on the grounds that they continued to do business after January 17 without registration, that their books and records were improperly kept, and that they refused to permit a second audit. 7 U.S.C. §§ 9, 12a(2) and (3), 13b. The enforcement division of the Commission moved to expedite the hearing and, on March 2, the Commission ordered that the hearing would begin on

March 8 and "continue without interruption until completed." Petitioners' counsel, who had scheduled other matters for March 8, 10, 11, 15, 16 and 21–25, moved unsuccessfully for rescission of the order. However, the Commission did postpone the starting date until March 9.

The hearing commenced in Boston on March 9 and the Commission's case continued until March 17. The Administrative Law Judge (ALJ) granted recesses on March 10, 11 and 14 to allow petitioners' counsel to attend his other commitments. At midday on March 17, the Commission was forced to conclude its case temporarily because of the absence of its final witness, Mr. LeMieux. Lloyd Carr then called its first witness. At the close of the day, the ALJ ordered the hearing transferred to Washington, to be resumed on March 21.

On March 21, Mr. LeMieux again failed to appear. Because petitioners had no witnesses available, the ALJ adjourned without taking any testimony. On March 22, Lloyd Carr called three witnesses. Their testimony was curtailed because of some unanticipated exclusionary rulings and was concluded at 3 o'clock in the afternoon. Petitioners' other witnesses were not available at that time, and, once more, the ALJ adjourned the session early. He warned counsel that the hearing would resume at 8:30 the following morning and that, if petitioners' witnesses were not ready then, the hearing would be closed. Petitioners' counsel informed the ALJ that his witnesses were coming from Boston and New York on the earliest morning flights; that he expected them to arrive by 8:30 A. M., but he couldn't be certain. The ALJ responded that the witnesses should have been in Washington already and that, if the morning flights were not early enough, the witnesses should fly down that night. He em-

---

**2.** The regulations which required an options dealer to obtain an FCM license became effective in November 1976. Lloyd Carr apparently applied for the FCM license before that time because it wished to trade in commodity futures. Registration as an FCM has long been required for futures trading. 7 U.S.C. § 6d.

**3.** In order to obtain an FCM license, an options dealer must meet certain minimum financial requirements, 7 U.S.C. §§ 6f(2) and 12a(2)(C); 17 C.F.R. § 1.17, and be "fit" to engage in the business of trading commodity options, 7 U.S.C. § 12a(2)(B).

phasized that, if the witnesses were not present at 8:30 the following morning, he would close the hearing.

At 8:30, the witnesses, delayed by a snowstorm, were not in the courtroom. At 8:32, the ALJ closed the hearing. At 8:33, the first witness arrived. Counsel requested the ALJ to reopen the hearing, but the ALJ refused. Lloyd Carr asserts that, if the hearing had not been closed, it would have introduced evidence tending to show that it met the requirements for a FCM license on January 17, 1977. In addition, it would have placed all its records in evidence.

The ALJ filed a recommended opinion on April 12, 1977. He found no evidence that petitioners were guilty of fraudulent conduct. He found, however, that although Lloyd Carr had not been registered, it continued in business after January 17; that its unregistered associated persons also continued to sell and solicit the sale of options; that Lloyd Carr refused to allow a second audit; and that Lloyd Carr's conduct warranted an inference that its books were not in order. He recommended that the company's application for an FCM license be denied; that Lloyd Carr Financial's Commodity Trading Advisor (CTA) license be revoked; that petitioners be ordered to cease and desist from further violations; that they be prohibited from trading on or subject to the rules of any contract market; that Carr and LeMieux be assessed penalties of $10,000 and that Lloyd Carr be penalized $100,000.

In its decision, filed August 1, 1977, the Commission agreed with the ALJ that peti-tioners had violated the regulations but did not predicate its holding upon the state of the company's books. Relying exclusively upon the findings that Lloyd Carr and its associated persons continued business without registration and refused permission for a second audit, the Commission denied the application for an FCM license, revoked the CTA license, and ordered petitioners to cease and desist from further violations.[4] This appeal followed.

Petitioners contend that the ALJ's abrupt termination of the hearing denied them due process; that they were entitled under Section 9 of the Administrative Procedure Act to continue to do business after January 17 while their application was pending,[5] and that the sanctions imposed by the Commission were excessive. Because we agree that the ALJ's refusal to reopen the hearing was an abuse of discretion, we do not find it necessary to pass on the other contentions.

■■■ The requirements of due process mandate that an administrative hearing will constitute "a fair trial, conducted in accordance with fundamental principles of fair play and applicable procedural standards established by law." *Swift & Co. v. United States,* 308 F.2d 849, 851 (7th Cir. 1962). *See Morgan v. United States,* 304 U.S. 1, 22, 58 S.Ct. 999, 82 L.Ed. 1129 (1938). Although an ALJ has wide latitude in the conduct of a hearing, *Radio Corp. of America v. United States,* 341 U.S. 412, 420, 71 S.Ct. 806, 95 L.Ed. 1062 (1951), "administrative convenience or even necessity cannot override the constitutional requirements of due process." *Cella v. United States,* 208 F.2d 783, 789 (7th Cir. 1953), *cert. denied,*

---

**4.** The Commission declined to assess monetary penalties against the petitioners, in part because of the absence of fraud or breach of fiduciary duty. It did not prohibit future trading on any contract market because there was no evidence that petitioners' activities had any adverse effect on trading conducted on any contract market.

**5.** Section 9(c) of the Administrative Procedure Act, 5 U.S.C. § 558(c) provides in part:

When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

It is settled that in order for § 9 to apply there must be an outstanding license. *Pan-Atlantic S.S. Corp. v. Atlantic Coast Line R.R.,* 353 U.S. 436, 439, 77 S.Ct. 999, 1 L.Ed.2d 963 (1957). Lloyd Carr concedes that it never has been awarded an FCM license. However, it contends that its prior CTA license serves as the outstanding license for the purposes of § 9(c).

347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954); *accord, Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 304, 57 S.Ct. 724, 81 L.Ed. 1093 (1937).

■ The hearing in this case was held on an expedited basis, and witness availability became a problem. The witnesses whom petitioners intended to call on March 23 were required to travel to Washington from Boston and New York under inclement weather conditions. Under these circumstances, the ALJ abused his discretion in failing to reopen the hearing when the first witness arrived one minute after the hearing was closed.

The Commission argues that any evidence which Lloyd Carr might have presented if the hearing had been completed would not have affected the outcome because Lloyd Carr admits that it continued to do business without registration after January 17. In view of the severity of the sanctions imposed, this argument is not persuasive.[6] Lloyd Carr asserts that it would have put its records into evidence and shown that it met the requirements for an FCM license on January 17. Although this would not have altered the fact that petitioners were in violation of regulations, they contend that it would be relevant to the sanctions to be imposed. *See Jack W. Savage*, CFTC Dkt. No. 76–1 (March 1, 1976), 39 Ad. L. 2d (P&F) 679, 684. Petitioners' counsel also contended at oral argument that the remaining witnesses would have testified to extenuating circumstances which might excuse violation of the regulations. We express no opinion as to the merit of petitioners' arguments. We conclude, however, that they should have an opportunity to present their evidence to the Commission. This will insure that any subsequent review of the Commission's order will be based upon a fair and complete record. Accordingly, we vacate the order of the Commission and direct it to reopen the hearing so that petitioners may complete their proof.

At argument, concern was expressed about the continuance of petitioners' unlicensed operations pending the completion of a rescheduled hearing. The Court has since been informed that a preliminary injunction against such operations has been granted by the United States District Court for the Western District of Michigan in an action brought by the Attorney General of that state. *Kelley v. Carr*, 565 F.Supp. 1267 (W.D.Mich.1977). What effect the findings in that action will have in the continued proceedings which we order is a matter upon which we express no opinion.

Remanded with directions.

---

**6.** Counsel for the Commission conceded candidly at oral argument that, although petitioners might reapply for registration, their chance of success on such an application would be minimal.