**WATKINS MOTOR LINES, INC.,**
**Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants,**

**and**

**Milne Truck Lines, Inc., Denver-Albuquerque Motor Transport, Inc., and Ringsby Truck Lines, Inc., Intervening Defendants.**

**Civ. No. 620L.**

United States District Court
D. Nebraska.

June 9, 1965.

---

5. 26 U.S.C. § 6323.

Duane W. Acklie, of Nelson, Harding & Acklie, Lincoln, Neb., for plaintiff.

Arthur J. Cerra, Washington, D. C., for defendants United States and Interstate Commerce Commission.

James C. Hardman, Chicago, Ill., for intervening defendants Denver-Albuquerque Motor Transport, Inc. and Milne Truck Lines, Inc.

Douglas McHendrie, Denver, Colo., for intervening defendant railroads.

Before JOHNSON, Circuit Judge, and ROBINSON and VAN PELT, District Judges.

VAN PELT, District Judge.

Watkins Motor Lines, Inc. (plaintiff or Watkins) instituted this action to set aside and enjoin the enforcement of certain orders of the Interstate Commerce Commission (Commission) entered in a proceeding before that agency entitled

Watkins Motor Lines, Inc., Extension—Four States, Docket No. MC–95540.

By an application pursuant to § 207 (a) of the Interstate Commerce Act [49 U.S.C. § 307(a)], filed December 26, 1961, as amended, Watkins sought a certificate of public convenience and necessity authorizing operations in interstate commerce as a common carrier by motor vehicle, over irregular routes, of meats, meat products, meat by-products, dairy products,[1] articles distributed by meat packinghouses, and frozen foods, from Denver, Colorado, to points in New Mexico, Arizona, Nevada and California. A public hearing on the application of Watkins was held on a consolidated record with Colorado-Arizona-California Express, Inc., Common Carrier Application; No. MC–124065 and Little Audrey's Transportation Company, Inc., Extension—Seven States; No. MC–108953 (Sub. No. 34). A number of motor carriers, as well as rail carriers appeared in protest to the application.[2]

In a recommended report and order, filed June 13, 1962, the examiner entered findings of fact and concluded and recommended that the application of Watkins be denied. The basis for the recommended denial was the finding that "public convenience and necessity do not require the operations for which the authority is sought.[3] "

Plaintiff filed exceptions to the report and recommended order. On December 4, 1962, the Commission, Division 1, found that plaintiff had failed to establish that the present and future public convenience and necessity required the proposed operation and entered an order denying the application. On December 19, 1962, plaintiff filed a "Petition for Finding of General Transportation Importance," which was denied by the Commission in an order served February 21, 1963. Watkins also filed a "Petition for Re-hearing" on January 2, 1963, which was denied by an order entered April 11, 1963, by the Commission, Division 1, acting as an Appellate Division.

◼ Thereupon this action was commenced to set aside the orders of the Commission and remand the matter for rehearing. Watkins asks, in the alternative, that this court instruct the Commission to grant the requested application.[4] The action was filed on May 16, 1963 and on June 10, 1963, the court issued a temporary restraining order enjoining the Commission from cancelling the temporary authority held by Watkins. Jurisdiction being noted under 28 U.S.C. §§ 1336 and 2325, this matter now stands ready for decision.

I

◼ The basic test in such a determination as this is set out in the Watkins

1. No proof is adduced in the record in support of this commodity although the lack thereof has no determinative effect on the decision reached herein.

2. Those motor carriers appearing specifically in protest to this application were Pacific Intermountain Express, Inc., Milne Truck Lines, Inc., Rio Grande Motorway, Inc., Denver-Albuquerque Motor Transport, Inc., Red Ball Motor Freight, Inc., Ringsby Truck Lines, Inc., Midwest Coast Transportation, Inc., Illinois-California Express, Inc., Curtis, Inc., Goldstein Transportation & Storage, Inc., Santa Fe Trail Transportation Company, Colorado-Arizona-California Express, Inc., and Navajo Freight Lines, Inc., Rail carriers in the Pacific Southwest Railway Association and Class I Rail Carriers in the

Southwestern Territory also appeared in protest to this application.

3. The application of Colorado-Arizona-California Express, Inc. was denied for the additional reason that the company was not fit, willing or able to perform the proposed service.

4. The court notes that such a prayer for relief exceeds the court's scope of authority. Courts of review have no authority to order an administrative body, such as the Interstate Commerce Commission, to perform a discretionary act, nor does the court have the authority to perform the act itself. Pan-Atlantic S.S. Corp. v. Atlantic Coast Line R. R. Co., 353 U.S. 436, 77 S.Ct. 999, 1 L.Ed.2d 963 (1957).

companion case of Colorado-Arizona-California Express, Inc. v. United States, 224 F.Supp. 894 (D.Colo.1963) [5] wherein the court states:

"The adequacy of the existing transportation service is one of the 'basic ingredients' in the determination of public convenience and necessity and an applicant for a certificate of convenience and necessity has the burden of showing by evidence that the proposed service is or will be required by the present or future public convenience and necessity." 224 F.Supp. at 896–897.

It should be noted that applicant has not only the duty of producing an affirmative showing that the proposed operation will be of beneficial value to the community but also incurs the added burden of showing that the operation is a necessity. The latter is generally ascribed to a lack of adequate existing facilities. Hudson Transit Lines, Inc. v. United States, 82 F.Supp. 153 (S.D.N.Y.1948); Sinett v. United States, 136 F.Supp. 37 (D.N.J. 1955); Capital Transit Co. v. United States, 97 F.Supp. 614 (D.C.1951). See also Inland Motor Freight v. United States, 60 F.Supp. 520 (E.D.Wash.1945).

■ The initial issue to be determined, therefore, is whether applicant has sufficiently met his standard of proof. This is not a determination anew however, but rather inquiry is directed to whether the Commission has observed the requirements of the law in the conduct of their proceedings and additionally, whether the conclusions as to public convenience and necessity have a rational basis in the facts found, which must be supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456,

95 L.Ed. 456 (1951); Interstate Commerce Commission v. Union Pac. R. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308 (1912); Capital Transit Co. v. United States, supra.

The testimony of all supporting shippers concerning the need for transportation into the seven western states involved in the consolidated proceeding revealed the following customer points, identified by city and the related shipper.

Arizona:

   (1) Flagstaff (Farmer Pete Packing Company)

   (2) Winslow (Farmer Pete Packing Company)

   (3) Phoenix (Farmer Pete Packing Company, Colorado Pizza Company, Cudahy Packing Company, United Fryer & Stillman, Inc.)

California:

   (1) San Diego (Cudahy Packing Company, Colorado Pizza Company, United Fryer & Stillman, Inc.)

   (2) Los Angeles (Colorado Pizza Company, United Fryer & Stillman, Inc., Carter Meat Company)

   (3) San Francisco (Carter Meat Company, United Fryer & Stillman, Inc.)

   (4) Burbank (United Fryer & Stillman, Inc.)

   (5) Oakland (United Fryer & Stillman, Inc.)

   (6) Marysville (United Fryer & Stillman, Inc.)

   (7) San Luis Obispo (United Fryer & Stillman, Inc.)

Idaho:

   (1) One unidentified city.

Nevada:

   (1) Las Vegas (United Fryer & Stillman, Inc.)

---

5. The Colorado-Arizona-California Express case, hereafter referred to as C-A-C, is closely related to the instant application inasmuch as both applications were based upon the record in a consolidated hearing, both applicants had a number of the same supporting shippers and both requests for certificates were premised on a number of identical grounds. The C-A-C opinion, wherein a three-judge Colorado court per Judge Doyle refused to set aside a Commission order denying the requested authority, is necessarily brought into the scope of this decision for obvious reasons.

New Mexico:

    (1) Gallup (Farmer Pete Packing Company)

    (2) Albuquerque (Colorado Pizza Company)

Oregon:

    (1) Portland (United Fryer & Stillman, Inc.)

Washington:

    (1) Seattle (United Fryer & Stillman, Inc.) [6]

It should be noted at this time that the C–A–C case considered the question of existing carrier service to the same transportation points as set out above, having before it the same record as this court.[7] A three-judge court in the District of Colorado found on the facts present in this case that there was substantial evidence in the record to support the conclusion of the Commission. While we are not bound by that determination, the opinion in C–A–C is given the fullest consideration by this court in reaching the conclusion set forth below.

Plaintiff takes exception with the Commission's finding of satisfactory service in relatively few instances. It is, however, asserted that the finding of satisfactory service was erroneous due to the lack of single-line service available to meet the requests of two of the support-ing shippers for a carrier able to make a delivery stop at Phoenix, Arizona on traffic moving to San Diego, California. Although this general assertion is not defined with any exactitude, Watkins is apparently referring to testimony of representatives of Cudahy Packing Company (Cudahy) and United Fryer & Stillman, Inc. (United Fryer) to the effect that they could not get single-line service into San Diego with a stop-off at Phoenix. The Cudahy representative, however, did testify that the best service utilized by their company was an interline service formerly rendered by a shipper whose operations had since ceased.

A representative from United Fryer testified that it was difficult to get a carrier to go into Phoenix and that their company had necessarily been forced to combine Phoenix shipments with those to California. The reason stated for this lack of carrier service was the belief that very few carriers went into Phoenix. Protestant testimony later revealed, however, that his city was served by as many as three truck lines by interlining with other carriers and by single-line service. Further, the representative from United Fryer related that their company had no objection to using other services and would use all available services.

---

6. Watkins is requesting authority to service only the states of Arizona, California, Nevada and New Mexico.

7. As noted by the court in the C-A-C opinion, the record reflects that the following carriers serve the named points:

Arizona:

    (1) Flagstaff (ICX, Navajo, Ringsby)

    (2) Winslow (ICX, Navajo)

    (3) Phoenix (Navajo, Ringsby, Milne)

California:

    (1) San Diego (Ringsby, PIE, Milne [through interchange.])

    (2) Los Angeles (ICX, Navajo, Milne, PIE, Ringsby)

    (3) San Francisco (Navajo, Ringsby, PIE)

    (4) Oakland, (Navajo, Ringsby, PIE)

    (5) Burbank (Milne)

    (6) Marysville (Ringsby [by interchange with its affiliate Fortier])

    (7) San Luis Obispo (Ringsby [by interchange with its affiliate Fortier])

Idaho:

    (1) Unidentified city (United-Buckingham, PIE, Ringsby)

Nevada:

    (1) Las Vegas (Milne, Ringsby, PIE, Navajo)

New Mexico:

    (1) Gallup (ICX, Navajo, Denver-Albuquerque)

    (2) Albuquerque (ICX, Navajo, Denver-Albuquerque, Rio Grande Motor Way [through interchange], Santa Fe Trail)

Oregon:

    (1) Portland (United-Buckingham, PIE, Ringsby)

Washington:

    (1) Seattle (United-Buckingham, PIE, Ringsby)

Plaintiff finds additional support for its contention that the Commission erred in finding satisfactory service in the testimony of the Farmer Pete Packing Company (Farmer Pete) representative, who stated that the company had trouble getting carriers to transport shipments into the Southwest. Witness, on cross-examination, limited the trouble point to Gallup, New Mexico, and then further testified that Farmer Pete had found no service going into New Mexico. Evidence was later adduced that Gallup was serviced by Illinois-California-Express and Navajo Freight Lines from Denver by direct single-line service in addition to interline service rendered by The Santa Fe Trail Transportation Company and Denver-Albuquerque Motor Transport Company. The same witness testified that Farmer Pete also had trouble getting service into Phoenix, Arizona, but the witness had never called on Ringsby Truck Lines for service and admitted that if service by Ringsby were available to Phoenix she would have no objection to using that service.

Specifically, the Commission found that all of the destination points in question were served by single-line operations of one or more of the protestants with the exception of Phoenix, Arizona, which had no single-line service available to meet the request of United Fryer for a delivery stop at Phoenix on traffic moving to San Diego. By interlining, however, many of the protestants can reach all of the points of distribution requested by the supporting shippers.[8] This is the distinguishing feature of this case from the case of Midwest Coast Transport, Inc., Extension—Caribou, Maine, No. MC 113843 (Sub. No. 40), 15 F.C.C. Par. 35,566 (1963), relied upon by Watkins. In that case the protestants could not render complete shipper service even collectively while here it can generally be rendered by single-line service and all points served by interlining.

The Colorado court in the C–A–C case relied on Ayer v. United States, 139 F. Supp. 440 (N.D.Ga.1956) in affirming the Commission's finding that existing rail and motor service was adequate. That case (Ayer) supported the existing facilities as "reasonably adequate" where the evidence indicated that all but one of the destination points required by shippers were available by interlining on a two carrier basis and the final terminal on a three carrier basis. The present facts represent an even stronger case for respecting the Commission's findings and conclusions inasmuch as most of the terminal points in question are served on a single line basis with the exception of Phoenix on shipments to San Diego and two California shipment points.

■ But fundamentally this case can be even more simplified. In the Ayer case the controversy was, as here, the adequacy of existing facilities; therein plaintiff was disputing the Commission's finding that two carrier and three carrier service was adequate. In this case, however, the Commission's finding was simply that the supporting shippers were not utilizing the available facilities. The dispute was not directed at interlining arrangements particularly, but testimony offered indicated that no transportation was available to needed points or available carriers could not take shipments at the time requested. The Commission's finding was that the shippers were not adequately utilizing the motor carriers now authorized and willing to meet their transportation requirements. In some instances this was attributed to the fact that the shippers were not aware of the carrier's availability.[9] We conclude the Commission's finding on this point is amply supported by the evidence and we

8. Report and Order of the Commission, Division 1, page 17, Cudahy Packing Co. also seeks intermediate stops at Phoenix on freight destined to California. Marysville and San Luis Obispo, California are served by Ringsby by using its affiliates as well as by other firms interlining.

9. The examiner concluded that the supporting shippers "are not familiar with available service, or use such available

choose not to disturb it. Colorado-Arizona-California Express, Inc. v. United States, supra. In Newman and Pemberton Corp., Extension, No. MC–102541 (Sub. No. 9), 15 F.C.C. Par. 35,534 (1961), cited by Watkins, the question was one of adequacy of joint line service and circuity of deliveries wherein shippers were forced to change the method of distribution. None of these factors are involved in the instant proceeding.

■ Another point disputed by the plaintiff concerns the alleged inadequacy of existing facilities, to-wit: late spotting of trucks at shipper's dock, delays up to six hours in delivery to California points and resulting overtime paid to shipper's employees. In support of its position plaintiff cites Alterman Transport Lines, Inc., Extension, No. MC–107107 (Sub. No. 76), 71 M.C.C. 375 (1957) and Penn Dixie, Inc., Extension, No. MC–110190 (Sub. No. 22), 69 M.C.C. 291 (1956). The Alterman situation involved the quantity of transportation available for less-than-truckload shipments rather than the quality of service rendered. In Alterman lack of available carriers for less-than-truckload shipments even resulted in loss of prospective customers for the shippers. Lack of available carriers is certainly not involved in the present application. The Penn Dixie case also involved lack of equipment, and to the extreme that some shippers were forced to stop production. An additional distinguishing feature of the Penn Dixie report is that the evidence reflected the facilities of practically all motor carriers supplying protective service had been utilized, which fact is not evident in the instant proceeding. Once more we make reference to the C–A–C case wherein that court observed:

"The Commission found all of the protesting carriers to be willing and able to provide services for the supporting shippers, and there is noth-

ing in the record to cast doubt upon this finding." 224 F.Supp. at 899.

Watkins further contends that the inadequacy of service available is evinced by testimony that twelve shipments were delayed by Ringsby in transporting commodities to California terminals. The Commission concluded that the carrier had generally provided shipper with adequate transportation and summarily dismissed the twelve delays in light of the number of shipments made and the additional availability of other carriers that could serve the shipper. These conclusions are based on adequate findings supported by the evidence. Colorado-Arizona-California Express, Inc. v. United States, supra. See United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

■ The final argument of Watkins, insofar as the Commission's finding of satisfactory service is concerned, is that the use of inter-changing or interlining was considered by the Commission in finding adequate service available. We initially note that this assertion is severely minimized by the finding of the examiner, affirmed by the Commission's order, that all of the service points named by the shippers are served by single line operations of one or more protestants, with the exception of stop-off deliveries to Phoenix with a terminal point of San Diego, California.[10] This specific route is served by a number of protestants on an interlining basis with other carriers. We conclude, as did the court in the C–A–C case, that there is absolutely no merit to plaintiff's argument that the Commission erred in considering interline arrangements with carriers who did not appear as protestants to show affirmative proof they were willing and able to interline with the existing carriers. See also, Curtis, Inc. v. United States, 225 F.Supp. 894 (D.Colo.1964);

service and have no substantial complaints against the service." Report and Recommendation of Examiner, Charles B. Heineman, served June 13, 1962.

10. The court does note that Marysville and San Luis Obispo, California are served by Ringsby through the use of its affiliates.

Robbins v. United States, 204 F.Supp. 78 (E.D.Pa.1962).

## II

■ A second claim of plaintiff is that the Commission erred in failing to grant Watkins a requested rehearing, or further hearing in the matter, for the purpose of showing certain fundamental changes in the transportation situation of Denver shippers.

It is a well established principle that petitions for rehearing or reconsideration are addressed to the sound discretion of the Commission, and any denial thereof is not open to question unless it is shown that there has been a clear abuse of such discretion. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). It is not within the purview of this court's power to determine whether a different result might have been reached had the same proffered evidence been submitted for rehearing. The court's only function is to determine whether the Commission has abused its discretion in denying the petition. The Commission stated in its order the petition was denied, there being "no sufficient cause." This summary dismissal of the request is clearly acceptable. Colorado-Arizona-California Express, Inc. v. United States, supra; Convoy Co. v. United States, 200 F.Supp. 10 (D.Or.1961); Yourga v. United States, 191 F.Supp. 373 (W.D.Pa.1961).

■ For the reasons above set forth [11] we conclude that plaintiff should be denied its requested relief and that the orders of the Commission be permitted to remain unaltered. And inasmuch as the court is denying plaintiff relief, the order of June 10, 1963 temporarily restraining enforcement of the Commission's order cancelling plaintiff's temporary authority will be vacated.

---

11. Plaintiff makes the additional argument, if not directly then most certainly by inference, that the Commission's determination was inconsistent with other Commission reports. We note, however, without any additional comment that "[a]n administrative body, such as the Commission, is not bound by the rule of stare decisis, and inconsistency of its holding with prior holdings in and of itself does not make the decision arbitrary." Ace Lines, Inc. v. United States, 197 F.Supp. 591, 599 (S.D.Iowa 1960).