In the Matter of the Application of
HAWAIIAN TELEPHONE COMPANY
for increased rates and charges

---

In the Matter of the Investigation of
HAWAIIAN TELEPHONE COMPANY
and the Lawfulness of the Charges for
and Adequacy of its Intrastate Commu-
nications Services

No. 5298

SEPTEMBER 10, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

On August 19, 1968, the Public Utilities Commis-
sion (hereinafter PUC) instituted a general investiga-

tion of the lawfulness of Hawaiian Telephone Company's (hereinafter appellee) rates and charges and the adequacy of appellee's communications services.

On June 26, 1970, the appellee filed an application with the PUC for increased rates and charges.

The proceedings on both the investigation and the application were consolidated and the PUC rendered the following numbered decisions and orders relevant herein.

1. Decision and Order *No. 2754* granted appellee an interim increase in its rates and charges to produce $4,840,000 per annum effective April 15, 1971.

2. On November 9, 1971, Decision and Order *No. 2853* granted appellee additional increases in rates to produce additional intrastate revenues of $6,380,315 per annum over and above the $4,840,000 interim increase.

3. On December 23, 1971, Decision and Order *No. 2862* approved appellee's revised rates and charges reflecting the increase granted in Decision and Order No. 2853.

The Director of Regulatory Agencies (hereinafter appellant) contends as follows:

A. Decision and Orders Nos. 2853 and 2862 are void because the Commission's ultimate conclusions are not supported by reliable, probative and substantial evidence as required by the Hawaii Administrative Procedure Act.

1. Once the Commission rejected all evidence on the fair rate of return, it erred in not dismissing the Company's application.

2. The establishment of the separations procedure is not based on substantial evidence.

3. The application and implementation of the separations procedure adopted to the test year results is not based on substantial evidence.

4. The Company did not carry its burden in

proving its new rate structure non-discriminatory.

   5.   The Commission failed to impose the duty upon the Company to show that the investment in its switching equipment was prudently made; the Commission's findings and conclusions are not supported by substantial evidence.

B.   Decision and Orders Nos. 2853 and 2862 are void because they are not supported by specific findings and conclusions on major ratemaking matters, and the evidence does not support such findings of the Commission.

   1.   The Commission failed to make findings on prudent investment rate base of the Company.

   2.   The Commission erred in failing to make findings· on the Company's traffic expense.

   3.   The Commission's findings that the expenses incurred in directory service advertising in the amount of $1,730,754 are reasonable is not supported by the evidence. The Commission failed to make any findings on other categories of commercial expense.

C.   Decision and Orders Nos. 2853 and 2862 are void because the Commission failed to afford fair hearings to the Staff and thereby deprived the consumer interest of a fair hearing.

   1.   The hearing strategy of the Company was to promote the Staff's position as the exclusive protector of the consumer interest, and then to limit the participation by the Staff. The Staff was not afforded full rights as a party before the Commission. The result was less than a fair hearing.

Appellee contends as follows:

I.   Whether the appellant [and the attorney general] can meet their heavy burden of showing that the Commission's decision is unjust and unreasonable

in its consequences or is clearly erroneous in view of the whole record.

II. Whether the appellant [and the attorney general] have met their burden of showing that the hearings were not fair.

III. Whether the appellant [and the attorney general] have any standing to appeal the decision of the Commission and whether their appeal is timely.

IV. If the appellant [and the attorney general] have met their burden on the foregoing and have standing, what relief should be afforded.

## OPINION

*Standing to appeal:*

A. In the instant case, we are of the opinion that the attorney general is without standing as a party to the proceedings before PUC or as an appellant herein. HRS § 28-1 and § 661-10 are not pertinent to the question.

B. We are of the opinion, however, that the Director of Regulatory Agencies is, by operation of law, a party to the proceedings before PUC and is an appellant herein in good standing. HRS § 26-9 (Supp. 1972) in pertinent parts provides:

§26-9 *Department of regulatory agencies.* The department of regulatory agencies shall be headed by a single executive to be known as the director of regulatory agencies.

The department shall protect the interests of consumers . . . throughout the State. . . .

The . . . public utilities commission . . . and . . . are placed within the department of regulatory agencies for administrative purposes.

. . . .

Notwithstanding any provision to the contrary, the employment, appointment, promotion, transfer, demotion, discharge, and job descriptions of all officers and employees under the administrative control of this department shall be determined by the director of regulatory agencies subject only to applicable personnel laws.

. . . .

The technical staff and other personnel that provide services to PUC are all subject to the above control of the director of regulatory agencies. We are of the opinion that through said staff and personnel and a specially designated deputy attorney general (*See White* v. *Board of Education,* 54 Haw. 10, 501 P.2d 358 (1972)) the director carries on his statutory duties and responsibilities as a protector of the interests of the consumers before the PUC.

*Appellant's contentions:*

Because of the hereinafter stated opinion and the record on appeal we do not determine the validity of appellant's several contentions on appeal save and except the following of appellant's allegations:

Decision and Orders Nos. 2853 and 2862 are void because they are not supported by specific findings and conclusions as required by the Hawaii Administrative Procedure Act.

HRS § 91-12 provides:

§91-12 *Decisions and orders.* Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law. If any party to the proceeding has filed proposed findings of fact, the agency shall incorporate in its decision

a ruling upon each proposed finding so presented. Parties to the proceeding shall be notified by delivering or mailing a certified copy of the decision and order and accompanying findings and conclusions within a reasonable time to each party or to his attorney of record.

In *In re Terminal Transportation, Inc.*, 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972), we held that the PUC violated the provisions of HRS § 91-12 and stated:

It is a settled rule in administrative law that a separate ruling on each proposed finding filed by a party is not indispensable. . . . All that is required is that the agency incorporate its findings in its decision. . . . *In so doing, however, the agency must make its findings reasonably clear. The parties and the court should not be left to guess, with respect to any material question of fact, or to any group of minor matters that may have cumulative significance, the precise finding of the agency.* [Citations omitted] (Emphasis added.)

We further stated:

We are dismayed by the Commission's failure to comply with the provisions of the Hawaii Administrative Procedure Act both in this case and in two other recent cases . . . . These provisions may not be disregarded. A fundamental reason for the enactment of the Hawaii Administrative Procedure Act was to insure fairness and impartiality in administrative proceedings. Fairness and impartiality cannot be insured when an administrative agency such as the Public Utilities Commission consistently refuses to abide the clear mandates of the statute.

We are of the opinion that the PUC has again failed to abide with the clear mandate of the Administrative Procedure Act. Its Decision and Order No. 2853 and

No. 2862 fail to meet the requirements of HRS § 91-12. PUC has failed to make its findings reasonably clear and we are left with the dilemma of guessing the precise findings of PUC on the material questions of fact involved herein.

Because of PUC's failure to make the necessary findings of fact we are unable to determine the validity of the conclusions or lack of conclusions of the PUC in the herein decisions and orders.

We are of the further opinion that the record on appeal shows that PUC did not recognize appellant as a proper party to the proceedings and thus denied appellant sufficient time to prepare and introduce necessary evidence on the several issues involved in the herein case of statewide import.

## CONCLUSION

These proceedings are remanded to PUC for further hearings and PUC shall grant to both appellant and appellee reasonably sufficient time to enable the parties to further prepare, submit, introduce additional relevant, probative and substantial evidence on the several issues involved herein. PUC shall, thereafter, make the necessary findings of fact and conclusions of law in accordance with this opinion.

To meet the equities of the herein proceedings and to secure restitution of the excess rates and charges, if any, in case the orders appealed from should not be sustained in whole or in part, the operation of PUC Decision and Order No. 2754, No. 2853 and No. 2862 is hereby stayed effective thirty (30) days after the entry of judgment on this appeal unless the appellee shall, prior to said thirty days, effectuate one of the following alternatives:

1. Place into an escrow account any and all sums derived from the increase in rates and charges permitted under the herein PUC decisions and orders collected

by appellee after said above thirty days; or

2. Post a bond with proper sureties with the PUC, providing for restitution to appellee's consumers of any increase in rates and charges mentioned in the decisions and orders herein which may be held unlawful. Said bond shall be constantly enlarged to match the continued receipt by appellee of said increase in rates and charges.

The above said escrow or bond shall remain in effect until the final disposition of this case after remand.

*Robert P. Jaress*, deputy attorney general, for appellant Attorney General.

*Richard S. Sasaki*, special deputy attorney general, for appellant Director of Regulatory Agencies.

*Marshall M. Goodsill* and *Hugh Shearer* (*Jenks, Kidwell, Goodsill and Anderson* of counsel) for appellee.

*Thomas Young*, deputy United States attorney, for United States of America.

---

CONCURRING AND DISSENTING OPINION OF ABE, J.

I concur with the substance of the opinion of my brother Kobayashi, and therefore also believe that the decisions and orders appealed from must be set aside. However, I find an additional important reason for setting aside the decisions and orders, not discussed by the opinion of my brother Kobayashi. Also, I feel that the terms of the order in the plurality opinion, with which order I concur only reluctantly, amount to an unwise exercise of our judicial power. Therefore, because of these substantial differences with the opinions of the other members of this court, and because of the extreme importance of the matters here at issue, I deem it necessary to set forth my views separately.

I.

Even assuming *arguendo* that my brother Marumoto

is correct in his opinion that the findings of fact made by the P.U.C. are precise enough so as not to be insufficient as a matter of law under HRS § 91-12, nonetheless, those findings are deficient in another significant way. Leaving aside the problem of whether the findings of fact are sufficiently precise, the rates set are invalid because of the appellee's conspicuous failure to introduce adequate evidence on, and the P.U.C.'s egregious laxity in its study of, the crucial "separations" procedure. I would hold that the decisions and orders appealed from must be set aside because they are unsupported by reliable, probative, and substantial evidence, as required by the Hawaii Administrative Procedure Act, HRS § 91-10(1).

In our federal system, the FCC has statutory authority to regulate rates for interstate and international telephone service, while the Hawaii P.U.C. determines intrastate charges. A "separations" procedure, or formula, determines the respective jurisdictional areas of each of these agencies, by apportioning between intrastate operation and all other operations the total telephone property, revenues, expenses, taxes, and reserves. *Cf. Smith* v. *Illinois Bell Tel. Co.,* 282 U.S. 133 (1930).

Appellee admits the obvious: this is a highly confusing and technical area. This court ordinarily defers to administrative expertise in such areas. *Re App'n of Hawaiian Elec. Co.,* 42 Haw. 233, 238, 245 (1957). I would normally be inclined to follow the rule of deferring to agency expertise in devising an appropriate "separations" procedure, but I can find no signs that the "separations" procedure settled upon was based on an exercise of even independent judgment, much less expertise. While I defer to agency expertise, I do not defer to what is clearly an arbitrary decision, without adequate support in the record.

In decision and order no. 2853 the Commission "found" that appellee's

. . . use of the jurisdictional separations procedure

specified in the FCC 1969 Report and Order in Docket No. 17975 and in the NARUC-FCC 1969 Separations Manual for purposes of the proceeding (which is based on the test year 1970) is proper and reasonable.

The issue raised before the P.U.C. and on this appeal is the applicability of the formula in the above FCC Report (which formula was devised for the contiguous forty-eight states) to the unique conditions raised by the geographical location of the Hawaiian Islands.[1]

The appellee sought the rate increase here challenged on the basis of allegedly deficient profits on *intra*-state operations. "Separation" of investment in plant and equipment used jointly by intra- and interstate and for-eign-operations, and "separation" of expenses (commonly incurred in all operations) into the intra- and interstate and foreign-components thereof is obviously a threshold issue in the determination of the merits of appellee's request for intrastate rate increase. The appellee carries the burden of proof in its application for a rate increase, *Ringsby Truck Lines, Inc.* v. *United States,* 263 F. Supp. 552, 554 (D. Colo. 1967), *appeal dismissed, sub nom. National Small Shipments Traffic Conf. Inc. et. al* v. *Ringsby Truck Lines Inc. et. al.,* 389 U.S. 576 (1968); *New Jersey Suburban Water Co.,* v. *Bd. of Public Utility Commissioners,* 122 N.J.L. 54, 4 A.2d 47, 48 (1939), *aff'd,* 123 N.J.L. 303, 8 A.2d 350, *cert. den. sub nom. McGregor, Receiver* v. *Bd. of Public Utility Commissioners, et. al.,* 309 U.S. 663 (1940). It follows *a fortiori* that the appellee has the burden of developing a proper "separations" formula.

It is clear to me that this burden was not carried, and it was therefore reversible error for the P.U.C. to order

---

[1] In the 1971 revision of the manual, which appellee agrees is substantially the same as the 1969 version, the statement appears: "(These procedures are *not necessarily designed* to apply to Alaska and Hawaii in view of the substantially different conditions existing in the case of these states)." *Revised Separations Manual* (Feb. 1971), p. 8 (emphasis added).

any rate increase, for there is no reliable, probative and substantial evidence in the record to support that increase.

Although the separations formula of the FCC Report was adopted by the P.U.C., at no point in the proceedings were the merits of this formula even discussed. The appellee introduced evidence at the hearings that representatives of appellee, of the FCC, and of the staff of the P.U.C. agreed at an earlier meeting that the FCC Report's formula was "generally reasonable" as applied to Hawaii. This assertion was controverted by the case presented by the P.U.C. staff. Both parties introduced conflicting second hand evidence as to the past and then current opinions of the FCC experts who had attended the meeting. The only other evidence on the appropriateness of the separations formula used in computation is a restatement and highlighting of assertions in the FCC Manual. Even the sum total of all this evidence is not the reliable, probative and substantial evidence that must be the basis of any agency order.

Furthermore, at no point in the record is there an indication of the commission's effort to deal with the substance or merits of the conflicting claims. Appellee itself as much as admits that the P.U.C. was derelict in this duty. Since the FCC accepts the validity of its own Report's formula, appellee states "there is no reason why the Hawaii Commission should embark on the formidable task of designing a formula peculiar to Hawaii."[2]

---

[2]It should be noted that the appellee contends that "[i]t is hardly reasonable to expect the Hawaii Commission on its own and without help from anyone to develop its own separations formula, particularly when the country's two leading experts on the subject (Messrs. Baker and Strassburg) have declared it unnecessary." Thus it seems that the appellee forgets that it was its burden to show the reasonableness of the separations formula. The appellee continues to carry the burden, even if, as appellee contends, Hawaii users of interstate telephone services have been discriminated against because the NARUC-FCC formula results in an abnormally *large* apportionment of revenues, expenses, etc. being made to interstate services, when compared with the apportionment made as to the interstate services used by customers in the contiguous forty-eight states.

On the contrary, there is every reason why the P.U.C. *must* do so, including the requirements of HRS § 91-10(1).

## II.

I cannot fully agree with the plurality opinion that invalid decisions and orders that establish invalid rates should continue to have any legal effect whatsoever, even temporary effectiveness while the P.U.C. has an opportunity to make necessary findings of fact and conclusions of law in accordance with our opinion to remand.

Any analysis of appropriateness of remedies must begin with the authority given this court by HRS § 91-14(g). This statutory provision grants the court a wide discretion because the court may

> affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced . . . .

This statute empowers this court to grant relief, *inter alia,* in the form ordered in the plurality opinion, or in the form of a remand and an order requiring appellee to refund the difference between the rates in effect prior to the decisions and orders that are annulled and those established by those invalid decisions and orders. I believe that this latter form of relief, in the form of a remand and a refund, should have been ordered. Therefore, I concur only reluctantly with the order in the plurality opinion, and do so only in order to prevent this court from being split in an unacceptable way.

The dissenting opinion of my brother Marumoto states that a refund would be improper because no stay was sought under HRS § 269-16, prior to the appeal taken in this case. The relevant portion of the statute apparently relied upon is:

The appeal shall not of itself stay the operation of the order appealed from, but the supreme court may stay the order after a hearing upon a motion therefor . . . .

I would not disagree with the proposition that this statute required that appellant seek a stay from this court if appellant desired to prevent the appellee from collecting the higher rates provided for in the decisions and orders challenged here, *if* appellant wished to achieve this result *prior* to our disposition of this case in this appeal. But HRS § 269-16 is not dispositive as to the power of this court to order a refund at this stage in the proceedings.

In construing other rules on stay of proceedings resembling the applicable rules in the statute, it has been held that a failure to seek a stay does not deprive a litigant of his right to an effective appeal, providing that there is no resultant and substantial prejudice to appellee and providing that the appellant makes clear his intention to appeal. This general rule has been applied even where, because of partial or complete execution of a judgment, a reversal on appeal would present serious practical problems in restoring the parties to their former positions. *Hawaiian Paradise Park Corp.* v. *Friendly Broadcasting Co.,* 414 F.2d 750, 752 (9th Cir. 1969).

To suddenly adopt a rule foreclosing the issue of the right to refund because of a mere tactical decision on the part of appellant would effectively penalize that party for its failure to take what is an optional, not a mandatory, step. The potentially heavy financial burdens imposable under HRS § 269-16 may very well have deterred appellant from seeking a stay. But since moving for a stay is not mandatory, it is not necessary to justify or excuse the failure of appellants to seek that relief. Furthermore, the record shows adequate notice of appeal; and, there can be no prejudice to appellee by appellant's failure to seek a stay, because appellant's failure to act has left

appellee in a better position than it could possibly have been in had appellant sought the stay.

Courts have split over the propriety of judicially ordered refunds following a declaration of invalidity, of the relevant decisions and orders setting utility charge rates. *See, e.g., Village of North Palm Beach* v. *Mason,* 188 So.2d 778, 780-1 (Fla. 1966); *contra, City of Los Angeles* v. *California P.U.C.,* 7 Cal. 3d 331, 102 Cal. Rptr. 313, 497 P.2d 785, 802-06 (1972). To me, neither indulging in abstruse and recondite arguments as to which line of authority should be adopted, nor abstractly analyzing whether the annulled decisions and orders are, or should be, void or void*able,* is likely to be fruitful. Rather, purely practical considerations suggest that judicially ordered refunds are most appropriate once we have determined that the decisions and orders are invalid.

Assuming that we might hold that the decisions and orders are invalid, appellee would have us leave current rates unchanged and remand to the P.U.C. for appropriate action, possibly including, *inter alia,* a P.U.C.-ordered refund. The plurality's decision apparently follows this line of reasoning as to any *over*charges for the period between the date of the annulled decisions and orders and 30 days following our decision in this appeal. Thereafter, although the appellee may be able to collect the rate set by the invalid orders, the old rate is reinstated. The reinstatement of the old rate may necessitate a further adjustment in any rate set by the commission on remand, in order to compensate for any possible *under*charges during this future period. To me, this approach renders the future task of the commission unjustifiably complex and certainly invites further and needless litigation.

But even if appellee's simpler suggestion were adopted, *i.e.,* that the current rates continue until modification by the commission, further needless litigation is still to be anticipated. Appellee's approach, adopted in

part by the majority for the period that is prior to 30 days following this opinion but subsequent to the promulgation of the decisions and orders appealed from, suggests a problem, because HRS § 269-16 may be interpreted as prohibiting retroactive action on the part of the *commission*. And, although Ch. 91 of HRS suggests that an agency may "repeal" a rule, the "repeal" concept is usually understood as including only prospective action. Since neither of these matters is before the court, I express no opinion on the extent of the P.U.C.'s retroactive powers, except to note that, at least arguably, the commission might be without any authority to carry out our mandate if refunds should be found to be appropriate under that mandate.

On the other hand, this court clearly has power to order a refund, for courts can act retroactively, and HRS § 91-14(g) gives this court what no statute gives the P.U.C., *i.e., express* authority to *"reverse"* an agency decision. *Cf. City of Los Angeles* v. *California P.U.C., supra.* Therefore, this court should order a refund of the monies collected under the invalid decisions and orders, and let the P.U.C. use prospective action to correct any inequity thereby resulting to the appellee. Such an approach is less difficult for the commission and will lead to a quicker promulgation of legal rates. It is also less likely to raise legal issues that, because they must be decided on appeal, will perforce delay still further the setting of fair telephone charge rates in Hawaii.

---

OPINION OF MARUMOTO, J., CONCURRING IN PART
AND DISSENTING IN PART, IN WHICH LEVINSON, J., JOINS

I concur in the holding in the opinion of the court that the director of regulatory agencies, acting through PUC staff and specially designated deputy attorney general, was a party to the PUC proceedings, and, as such,

has standing on this appeal. I dissent from the remand of the cause to PUC for further proceedings.

With respect to restitution to customers of any excess charges collected by appellee, the amount thereof being the excess, if any, of the rates allowed in decision and order No. 2862 over the rates finally determined to be lawful, I think that appellee would be liable to make such restitution only with respect to the excess charges collected after the entry of the judgment on this appeal. The reason for this is that there was no stay of the operation of decision and order No. 2862, pursuant to HRS § 269-16, during the pendency of this appeal.

In connection with the contingency that appellee may be liable to make a restitution, I would require appellee to make a showing to PUC that it has the financial ability to make the necessary restitution, and would call upon it to effectuate either of the alternatives mentioned in the opinion only upon its failure to make such showing.

The reasons stated in the opinion for the remand to PUC for further proceedings are: (1) decisions and orders No. 2853 and No. 2862 did not meet the requirements of HRS § 91-12; (2) PUC failed to make its findings "reasonably clear," leaving this court with the dilemma of guessing its precise findings on the material questions of fact involved in the case; (3) this court is unable to determine the validity of the conclusions or lack of conclusions of PUC in the mentioned decisions and orders because of its failure to make "the necessary findings of fact"; and (4) PUC did not recognize appellant as a proper party to the proceedings, thereby denying him sufficient time to prepare and introduce necessary evidence on the "several issues of State-wide import" involved in the case.

With regard to reason (1), I am of the opinion that decisions and orders No. 2853 and No. 2862 contain findings and conclusions which satisfy the requirements of

HRS § 91-12. Those findings and conclusions are wide-ranging, detailed, and cover all matters relevant to, and that require consideration in, the intrastate rate-making process. They "incorporate" a ruling on every proposed finding presented by appellant, although each proposed finding is not discussed separately.

It is stated in 2 Davis, *Administrative Law Treatise* 438 (1958), with regard to the provision of § 8(b) of the original Federal Administrative Procedure Act, 60 Stat. 242, which required the record to show the ruling upon each finding, conclusion, or exception presented:

> "The principal problem of interpreting this provision of section 8(b) is whether the agency must make a separate finding with respect to each proposed finding and exception. A single set of 'findings and conclusions' may conceivably 'show the ruling upon each such finding, conclusion, or exception presented' without doing so with respect to each one separately. * * * The courts have held that a separate finding need not be made on each exception to the examiner's report, that a separate finding need not be made on each proposed finding submitted by a party, and that the Act does not require detailed or numbered findings on every subsidiary evidentiary fact."

The foregoing statement is particularly applicable to HRS § 91-12 because the legislative history of the Hawaii Administrative Procedure Act shows that the legislature deliberately omitted from § 91-12 the provision in § 12 of the Revised Model State Administrative Procedure Act requiring the findings of fact, if set forth in statutory language, be accompanied by a concise and explicit statement of the underlying facts supporting the findings. House Standing Committee Report No. 8, 1961 House Journal 653, 660 (1961).

The holding of this court in *In re Terminal Trans-*

*portation, Inc.,* 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972), with respect to HRS § 91-12, is not apposite here because the PUC decision and order in that case did not incorporate a ruling on every proposed finding presented by a party to the proceedings. This court stated in that case that it is a settled rule in administrative law that a separate ruling on each proposed finding filed by a party is not indispensable.

With regard to reasons (2) and (3), the position of the majority of the court is not clear from the opinion, whether it is that PUC failed to make "the necessary findings of fact," or it is that PUC did make the necessary findings of fact but did not make the findings "reasonably clear." The opinion contains only a bare statement of the reasons, without any discussion regarding the respects in which PUC failed to make the necessary findings of fact or to make the findings reasonably clear.

This case warrants much more than the cavalier treatment accorded it in the opinion.

I think that it is in the interest of administrative and judicial economy, as well as in the interest of the parties, that, if there were any deficiencies in the prior PUC proceedings, such deficiencies be *properly* corrected in the proceedings on remand.

To that end, I think that the opinion should have provided guidelines to be followed by PUC and the parties in the proceedings on remand, by setting forth the particulars of the failure of PUC to make the necessary findings of fact or to make the findings reasonably clear.

I also think that the opinion should have specified the "several issues of State-wide import" as to which appellant was denied sufficient time to prepare and introduce necessary evidence.

Without such guidelines, PUC and the parties would be in a quandary in determining the scope of additional

evidence to be adduced at the remand proceedings, for decisions and orders No. 2853 and No. 2862 contain a fairly extensive discussion, and findings and conclusions based thereon, regarding the issues relevant to the determination of just and reasonable rates, which provide a fair return on appellee's property used or useful for public utility purposes.

With regard to reason (4), the record clearly shows that PUC recognized appellant as a party to the proceedings and accorded appellant sufficient time to adduce the necessary evidence. The record is as follows:

Appellee filed its application for rate increase on June 26, 1970. Following a pre-hearing conference held on November 6, 1970, a pre-hearing order was entered, providing for presentation by appellee of its case commencing January 26, 1971, and for presentation of appellant's case 45 days after the completion of appellee's case. Appellee's presentation and appellant's cross-examination of appellee's witnesses were completed on February 26, 1971, at which time the hearings were adjourned to April 12, 1971, being 45 days after the completion of appellee's case. On April 6, 1971, appellant filed a motion for continuance to the middle of August 1971. PUC granted appellant's motion to the extent of continuing the hearings to June 14, 1971. The hearings actually resumed on June 15, 1971, and were thereafter adjourned to July 7, 1971. Appellant's case was then presented on July 7, 8, 12, 13, 14 and 16, 1971.