## IN THE MATTER OF THE APPLICATION OF CHARLEY'S TOUR AND TRANSPORTATION, INC.

NO. 5383

MAY 15, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI
AND OGATA, JJ., CIRCUIT JUDGE LUM
ASSIGNED BY REASON OF VACANCY

464

OPINION OF THE COURT BY RICHARDSON, C.J.

On February 19, 1971, appellee-applicant Charley's Tour and Transportation, Inc., a certified common carrier of passengers by motor vehicles, applied to appellee, the Public Utilities Commission, hereinafter the "Commission," for an expansion of its operating authority under Certificate of Public Convenience and Necessity No. 428-C to include, in addition to existing authority to operate motor vehicles with seating capacities of 1-7 and 8-12 passengers, authority to operate

motor vehicles with a seating capacity of 12 or more passengers over irregular routes on the island of Oahu. On November 9, 1971, applicant amended its application to include a request for temporary expansion of authority to operate motor vehicles with a seating capacity of 12 or more passengers. The Commission permitted appellants Robert's Ilima Tours, Inc., Trade Wind Transportation Co., Ltd., and Gray Line Hawaii, Ltd., three competing carriers, to intervene in the proceedings to protect the granting of the application.

Hearings on the application were held on November 9, 10, 11, 12 and 15, 1971, before the four members of the Commission (one of the memberships of the Commission was vacant). Commissioner Wasano was absent from the hearings on November 12 and Chairman Dolim was absent for 41 minutes from the hearings on November 15. On November 16, the Commission granted the application for temporary authority effective December 1. Appellants filed proposed findings of fact, conclusions of law, decision and order on December 15, 1971. Applicant filed proposed findings of fact, conclusions of law, decision, and order on December 27, 1971.

On January 18, 1972, Commissioner Arakaki was sworn in to replace Commissioner Wasano, who had resigned, and Commissioner Horikawa was sworn in to fill the vacancy. At the Commission's meeting on February 11, 1972, the three commissioners who had attended the hearings, including Chairman Dolim, who had absented himself from a portion of the hearings, voted to grant the application for permanent expansion of authority. The two new commissioners, who did not participate in the hearings, abstained from the voting. The parties were notified of this decision by letter on February 18, 1972.

On March 15, 1972, appellants filed a petition to reopen to take additional new evidence of applicant's financial responsibility. On April 18, 1972, the Commission filed Decision and Order No. 2941 formally granting the application. At no prior time, however, did the Commission submit a proposed decision to the parties. Appellants filed a petition for reconsideration with the Commission on April 28, 1972. At the

Commission's meeting of May 2, 1972, Chairman Dolim and the two "new" commissioners voted to deny the petition, the other commissioners being absent. From the denial of the petition this appeal was taken.

I

We affirm.

At the outset we note that our review in this case is limited to a determination of:

> . . . whether the Commission has observed the requirements of the law in the conduct of their proceedings and additionally, whether the conclusions as to public convenience and necessity have a rational basis in the facts found, which must be supported by substantial evidence on the record considered as a whole. *Watkins Motor Lines, Inc. v. United States,* 243 F. Supp. 436, 439 (D. Neb. 1965).

Appellants raise seven citations of error. First they contend that because not all of the commissioners who voted to approve appellee's application heard and examined all of the evidence, the Commission violated the requirements of HRS § 91-11[1] by not sending a proposed decision to the appellants. Second they argue that the Commission violated the requirements of HRS § 91-12[2] by failing to make a ruling on each finding of fact proposed by appellants. This

---

[1] This section provides:

§ 91-11 *Examination of evidence by agency.* Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

[2] This section provides in pertinent part:

§ 91-12 *Decisions and orders.* Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law. If any party to the proceeding has filed proposed findings of fact, the agency shall incorporate in its decision a ruling upon each proposed finding so presented.

court has in four recent cases, *In re Oahu Terminal Services, Inc.*, 52 Haw. 221, 473 P.2d 573 (1970); *In re Western Motor Tariff Bureau, Inc.*, 53 Haw. 14, 486 P.2d 413 (1971); and *In re Terminal Transportation, Inc.*, 54 Haw. 134, 504 P.2d 1214 (1972), and *In re Hawaiian Telephone Co.*, 54 Haw. 663, 513 P.2d 1376 (1973), admonished the Commission for failure to comply with the procedural requirements of the Hawaii Administrative Procedures Act. We will not, as we indicated in *In re Terminal Transportation Inc.*, *supra*, 54 Haw. at 138, 504 P.2d at 1216,

> in the absence of clear legislative direction to the contrary, . . . interpret provisions of the Hawaii Administrative Procedure Act so as to give government even "an appearance of being arbitrary or capricious." (Citations omitted.)

Both appellees (the Commission and the applicant) reply that the appellants cannot raise these procedural errors on appeal to this court because the errors were not specifically set forth in their petition for reconsideration to the Commission as required by HRS § 271-32(b).[3]

Appellants raised ten citations of error in their petition for reconsideration. Because no citations to violations of the Administrative Procedures Act were properly raised, we find ourselves powerless under the statute to consider them on appeal. It is well established that this court has jurisdiction to review the actions of an administrative board only to the extent allowed by statute. *Gustetter v. City and County of Honolulu Motor Vehicle Dealers' & Salesmen's Licensing Bd.*, 44 Haw. 484, 485, 354 P.2d 956, 957 (1960).

The Supreme Courts of Ohio, Wisconsin, and Illinois have followed this policy in construing similarly-worded statutes.[4] *City of Struthers v. Penn Central Co.*, 23 Ohio St. 2d

---

[3] This section provides:

(b) The application for reconsideration or a rehearing shall set forth specifically the ground or grounds on which the applicant considers the decision or order to be unlawful. *No person shall in any court urge or rely on any ground not so set forth in the application.* (Emphasis added).

[4] OHIO REV. CODE ANN. § 4903.10 (Baldwin 1974) provides in pertinent part:

No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in said application.

1, 4, 260 N.E.2d 836, 839 (1970); *Village of Cobb v. Public Service Commission*, 12 Wis. 2d 441, 457-58, 107 N.W.2d 595, 604 (1961); *Meinhardt Cartage Co. v. Illinois Commerce Comm.*, 15 Ill. 2d 546, 550, 155 N.E.2d 631, 634 (1959). The court in *Meinhardt* explained that the purpose of this statute is not to seek a reconsideration of the entire proceeding, but to "point out and have corrected mistakes of law or of fact, or both, which it is claimed the Commission has made in reaching its determination." The court reasoned that such errors "can be remedied by the Commission while it has full control of the matter and no appeal may be necessary."

II

Before granting or expanding a certificate of public convenience and necessity, the Commission must determine that (1) the applicant is fit, willing, and able to perform the service proposed, and (2) the proposed service is required by the present or future public convenience and necessity. HRS § 271-12(c).[5]

Appellants cite five substantive errors in the Commission's decision. In summary, however, appellants have raised only two arguments: (1) that the applicant did not meet its burden of proving to the Commission that the proposed service is required by present or future public convenience and necessity, and (2) that the applicant is financially fit to provide the proposed service.

---

WIS. STAT. § 196.405(2) (1961) provides in pertinent part: No person or corporation shall in any court urge or rely on any ground not so set forth in said application for rehearing.

ILL. ANN. STAT. ch. 111 2/3 § 71 (Smith-Hurd 1966) provides in pertinent part:

No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission.

[5] HRS § 271-12(c) provides in pertinent part:

. . . a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise the application shall be denied.

Appellants reason that since the existing carriers have, except for minor exceptions, fully provided for the present public convenience and necessity and are ready, willing, and financially able to provide such additional service as future public convenience and necessity will require, applicant's proposed service would not be in the public convenience and necessity, but would have an adverse effect on it. Therefore, all competing carriers, not only the intervenors, should have been permitted to testify on the adverse effect to their operations of the proposed services. While it is well settled that the Commission should consider the public interest in maintaining the health and stability of existing carriers and the adequacy of existing services, these are but two of the elements to be considered in determining public convenience and necessity. *Carolina Freight Carriers Corp. v. United States,* 323 F. Supp. 1290, 1295 (W.D.N.C. 1971), *Watkins Motor Lines Inc. v. United States, supra,* 243 F. Supp. 436, 439 (D. Neb. 1965).

The burden is on the applicant to show that the proposed operation not only will be of beneficial value to the community, but also is a necessity. Generally, the applicant may meet this burden by demonstrating either a lack of adequate existing facilities to presently serve the public, or insufficient facilities to meet anticipated future demands for service. *Watkins Motor Lines, Inc. v. United States, supra,* 243 F. Supp. at 439. The Commission may authorize the certificate even though other existing carriers might be fit, willing, and able to furnish successfully the proposed service. *I.C.C. v. Parker,* 326 U.S. 60, 70 (1945).

As we noted earlier, our scope of review is limited to a determination of whether the Commission's findings are supported by substantial evidence on the record. We have defined substantial evidence to mean "relevant and credible evidence of a quality and quantity to justify a reasonable man to reach a conclusion." *Acoustic, Insulation, and Drywall, Inc. v. Labor Board,* 51 Haw. 312, 316, 459 P.2d 541, 544 (1969). The U.S. Supreme Court, commenting on this definition in *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939), has further stated that "it must be enough to justify, if the trial were to a jury, a refusal to direct a

verdict when the conclusion sought to be drawn from it is one of fact for the jury." An appellate court should not substitute its judgment for that of the Commission, whose findings will be presumed to be reasonable if supported by substantial evidence. *Honolulu Gas Co. v. Public Utilities Comm.*, 33 Haw. 487, 521 (1935).

We now turn to the record to determine whether the evidence in support of the Commission's decision is sufficient to support a finding of public convenience and necessity. The evidence to support this finding included testimony that (1) there existed a steady increase in the volume of tourist visitor arrivals in Hawaii, including significant seasonal surges of Japanese tourists, resulting in a need for more and better bus service on Oahu; (2) certain sectors of the public were inadequately serviced by the existing carriers; (3) the contemplated sale of the Honolulu Rapid Transit Co. to the City and County of Honolulu would deprive existing carriers of their major source of long-term and short-term leased busses; (4) that applicant had experienced difficulty in chartering busses in advance from existing carriers to satisfy the demands of its customers; and (5) most of the existing carriers either contemplated purchasing or leasing additional busses, or had additional busses on order. The finding that the proposed service is required by the present and future public convenience and necessity is therefore based on substantial evidence and should be affirmed.

The finding of fitness to perform the proposed service has two aspects: first, a determination of the applicant's fitness to operate under the certificate, including a review of its previous service and second, its financial fitness. Only the latter determination is contested here. Therefore, we must determine from the record whether there was substantial evidence to support a finding that the applicant was financially able at the time to acquire the necessary equipment to expand its operations.

The evidence to support a finding of fitness included, in addition to the applicant's financial statement for the nine months ending September 30, 1971, testimony that (1) the applicant had a long history as a carrier in a lower classifica-

tion, and through a separate corporate entity, in the taxi industry; (2) applicant desired to initiate innovative tours; (3) by the applicant's certified public accountant, that the applicant's sole stockholder had made an inter-company loan to the applicant of $12,300 from Charley's Taxi, of which she was also sole stockholder, and that the applicant's deficit financial position was not unusual for a recently-acquired company which had assumed large existing debts of its predecessor; and (4) by applicant's business manager, that he had arranged for the purchase and delivery of four additional busses and that applicant's sole stockholder and other undisclosed financial institutions would finance the acquisition.

From the record there is no reason to conclude the applicant could not raise additional capital necessary to underwrite the expansion of authority; thus the finding of fitness is supported by substantial evidence. Although we do not condone the Commission's practice of refusing to compel an applicant to disclose the identity of or discuss the credit-worthiness of his financial sources, we do not believe that the failure to do so constituted prejudicial error.

In reviewing the record, we are mindful of the comment of Judge Augustus Hand in *Luckenbach S.S. Co. v. United States*, 122 F. Supp. 824, 828-29 (S.D.N.Y. 1954), *aff'd*, 347 U.S. 984 (1954):

> It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function. . . .
>
> . . . Thus, where the issue raised does not seem of manifest importance and the Commission has indicated that it has considered it, we do not think it wise or necessary to protract the litigation further by remanding the order for more explicit and seemingly useless discussion.

Affirmed.

*Jack H. Mizuha* and *Arthur S. K. Fong* for intervenor-appellants.

*Wendell K. Kimura* (*Ben F. Kaito* with him on the brief) for applicant-appellee.

*Harry S. Y. Kim*, Deputy Attorney General (*George Pai*,

472

Attorney General, with him on the brief) for the Commission.

DISSENTING OPINION BY LEVINSON, J.

The Public Utilities Commission (PUC) was expressly constrained from granting the applicant's request for an expanded certificate of public convenience and necessity unless it found "that the applicant is fit, willing, and able properly to perform the service proposed." HRS § 271-12. In this connection, the PUC considered the applicant's financial fitness to perform the proposed service an essential criterion of section 271-12. The majority opinion expresses, facially at least, agreement with this construction of the statute, and concludes that the record in this case contains "substantial evidence" to support the PUC's finding that the applicant is financially fit. Yet the evidence upon which the PUC relied and which the majority now characterizes as "substantial" lacks the most rudimentary indicia of the applicant's economic capacity to perform the operation for which it sought authority. I can only conclude that the majority has, through misuse of the already elastic concept of substantial evidence, abrogated the statutory requirement of financial fitness in this case to reach a result which it believes appropriate notwithstanding the state of the record.

The applicant's own accountant testified that its existing working capital was inadequate to purchase the equipment necessary to the proposed service. Accordingly, the applicant sought to show financial fitness in this respect by proof that outside sources of financing were available to it. It adduced the following evidence to underpin its theory of financial responsibility: (1) Charley's Taxi, an independent enterprise also owned by the applicant's sole stockholder, had advanced loans to the applicant in the past, (2) financial institutions whose names it refused to reveal were prepared to finance the acquisition of the new equipment, and (3) in the event all else failed, its sole stockholder would advance needed funds out of her personal resources. The record is barren of any other evidence that the applicant is financially capable of fulfilling the expectations underlying its applica-

tion for an expanded certificate.

In my opinion, this court should defer to the judgment of the PUC only when each and every statutory requirement for a certificate of public convenience has been met by *some* evidence on the record. The substantial evidence test, when properly applied, affords the maximum possible judicial deference to the special expertise of an administrative agency consistent with the public interest in securing adherence by that agency to statutory mandates. However, under that test a court should not affirm an agency adjudication when the record reveals a total void of evidence on a key statutory point, even though evidence on other points abounds. *See, e.g., United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 533 (1946) (finding by Interstate Commerce Commission that applicant for license is financially fit must have *some* factual foundation on the record); *ICC v. Parker*, 326 U.S. 60, 64, *reh. denied*, 326 U.S. 803 (1945) (finding by Interstate Commerce Commission that public convenience and necessity requires granting a license "must have had the necessary factual findings to support it").

I find the record in this case plainly wanting of evidence that the applicant can obtain the financing necessary to the proposed service, and hence that it is "fit . . . and able" to perform that service, as required by HRS § 271-12. While Charley's Taxi has advanced money to the applicant in the past, there is no indication that it will do so or that it is even considering doing so in the future. Moreover, the applicant refused to disclose the credit worthiness or even the identities of those "financial institutions" which it asserted were prepared to finance the acquisition of needed equipment. The majority states that it does not "condone the Commission's practice of refusing to compel an applicant to disclose the identity of or discuss the credit worthiness of his financial sources." However, it is beyond my comprehension how the majority can conclude that the PUC's "failure to do so [did not constitute] prejudicial error," when, on the state of the record in this case, the applicant's undisclosed sources could just as easily be impecunious or undesirable as acceptable. Finally, it would seem elementary that the willingness of the

474

applicant's sole stockholder to put her personal resources at the applicant's disposal cannot prove the applicant's financial fitness absent some evidence, lacking in this record, that the stockholder herself is sufficiently "financially fit" to implement her willingness.

If the record in this case demonstrated merely a paucity of evidence on the applicant's financial fitness, I might be persuaded to subscribe to the majority position. Because the record shows a vacuum on this key point, however, I cannot agree with the majority's misplaced reliance on the substantial evidence test to fill it. I therefore dissent.