Anthony DiPLACIDO, Petitioner,

v.

COMMODITY FUTURES TRADING
COMMISSION, Respondent.

No. 08–5559–ag.

United States Court of Appeals,
Second Circuit.

Oct. 16, 2009.

Eric R. Levine (Eric P. Heichel, Stephen L. Weinstein, on the brief), Eiseman Levine Lehrhaupt & Kakoyiannis, P.C., New York, NY, for Petitioner.

Ralph E. Avery, Assistant General Counsel (Terry S. Arbit, General Counsel; Bradford M. Berry, Deputy General Counsel; Gloria P. Clement, Assistant General Counsel, on the brief), Commodity Futures Trading Commission, Washington, D.C., for Respondent.

PRESENT: REENA RAGGI, DEBRA ANN LIVINGSTON, Circuit Judges, BRIAN M. COGAN,* District Judge.

### SUMMARY ORDER

Anthony J. DiPlacido seeks review of the Commission's 79–page decision affirming an administrative law judge's ("ALJ")

---

\* District Judge Brian M. Cogan of the United States District Court for the Eastern District of New York, sitting by designation.

---

determination that he manipulated settlement prices for electricity futures contracts. DiPlacido argues that (1) the decision violates due process, because he lacked notice of the theory of manipulation under which he was found liable; (2) the applied theory of manipulation was erroneous as a matter of law; (3) the weight of the evidence does not support a finding of liability; (4) the ALJ made improper evidentiary rulings and exhibited bias; and (5) the sanctions imposed were excessive. We assume familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

### 1. *Due Process*

■ DiPlacido's due process challenge is without merit. Due process requires that "a regulation carrying penal sanctions . . . give fair warning of the conduct it prohibits or requires." *Rollins Envtl. Servs. (NJ) Inc. v. U.S. EPA*, 937 F.2d 649, 653 n. 2 (D.C.Cir.1991) (internal quotation marks omitted). Although "[a]n agency is free . . . to interpret its governing statute case by case through adjudicatory proceedings rather than by rulemaking," if it "suddenly changes its view . . . with respect to what transactions are bona fide trading transactions," it may not then "charge a knowing violation of that revised standard and thereby cause undue prejudice to a litigant who may have relied on [its] prior policy or interpretation." *Stoller v. CFTC*, 834 F.2d 262, 265–66 (2d Cir.1987) (internal quotation marks and citations omitted).

Citing the Commission's observation that his case raised "issues of first impression," *In re DiPlacido*, Comm. Fut. L. Rep. (CCH) ¶ 30,970, 2008 WL 4831204, at

*1, 2008 CFTC LEXIS 101, at *1 (CFTC Nov. 5, 2008), DiPlacido complains that this is the first time the Commission has found manipulation "based solely on trade practices," Appellant's Br. 11. We disagree. As the Commission itself observed, the theory applied in this case was adopted in *In re Henner*, a case brought by its predecessor agency under a statute that is the substantive equivalent of the one at issue here, and concerning closely analogous facts. 30 Agric. Dec. 1151 (1971) (finding manipulation where trader "intentionally paid more than he would have had to pay . . . for the purpose of causing the closing quotation [to increase]"); *see also In re Zenith–Godley*, 6 Agric. Dec. 900 (1947) (holding that actions of trader constituted manipulation). The Commission also noted that, subsequent to *Henner*, it had pursued trade-based manipulation cases.

DiPlacido argues further that the Commission denied due process by abandoning an existing requirement for proof of defendant's control over the relevant market. The Commission's well-established precedents are plainly to the contrary, indicating that market control may be a feature of some forms of manipulation, *e.g.*, a "corner" or "squeeze," but is *not* a requirement of manipulation in all its forms. *See, e.g., In re Hohenberg Bros. Co.*, [1975–1977 Transfer Binder] No. 75–4, Comm. Fut. L. Rep. (CCH) ¶ 20,271, 1977 WL 13562, at *7, 1977 CFTC LEXIS 123, at *24 (CFTC Feb. 18, 1977) ("A dominant or controlling

position in the market is not a requisite element to either manipulation or attempted manipulation . . . .").[1]

Thus, this is not a case like *Stoller v. CFTC*, in which the agency suddenly changed its position and banned a "commonplace" practice. 834 F.2d at 265. Rather, the Commission's reading of the broad language of 7 U.S.C. § 13(a) is consistent with prior readings and with its own practice. *See, e.g., In re Indiana Farm Bureau Coop. Ass'n, Inc.*, [1982–1984 Transfer Binder] No. 75–14, Comm. Fut. L. Rep. (CCH) ¶ 21,796, 1982 WL 30249, at *3, 1982 CFTC LEXIS 25, at *8 (CFTC Dec. 17, 1982) (citing definition of manipulation as "any and every operation or transaction or practice, the purpose of which is not primarily to facilitate the movement of the commodity at prices freely responsive to the forces of supply and demand; but, on the contrary, is calculated to produce a price distortion"). Further, DiPlacido's own actions, not least his instruction to Livingston to use the code words "don't be shy," rather than instructing him to "buy contracts worst or sell them worst," Arb. Tr. 107, suggest actual notice that his conduct was wrongful.

Accordingly, we identify no denial of due process.

### 2. *Applicable Legal Standard*

■ DiPlacido claims that the Commission's definition of manipulation is arbitrary and capricious. Our review of the Commission's legal judgments is plenary,

---

1. *Vitanza v. Board of Trade of the City of New York*, No. 00–CV–7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002), cited by DiPlacido for the proposition that a "settlement price" is not susceptible to manipulation as a matter of law, is distinguishable. The question in that case was whether defendants' alleged manipulation of settlement prices fell within the meaning of 7 U.S.C. § 25(a)(1)(D), which creates a private right of action where defendants manipulate "the price of [futures] con-

tracts, or the price of the commodity underlying such contracts." *Vitanza v. Bd. of Trade of City of N.Y.*, at *5. On the commodities exchange at issue in *Vitanza*, settlement prices were determined by use of an arithmetical formula, rather than (as here) by trading. *See id.* at *1. Thus the court found that plaintiffs had failed to state a claim under Section 25(a)(1)(D) where they alleged manipulation of the settlement price. *Id.* at *5.

*Piccolo v. CFTC,* 388 F.3d 387, 389 (2d Cir.2004), but "where a question implicates Commission expertise, we defer to the Commission's decision if it is reasonable," *id.; see also Chevron, U.S.A., Inc. v. Natural Res. Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In the absence of a statutory definition of "manipulation," the Commission has established a four-part test under which it will find manipulation where a preponderance of the evidence shows "(1) that the accused had the ability to influence market prices; (2) that [he] specifically intended to do so; (3) that artificial prices existed; and (4) that the accused caused the artificial prices." *In re Cox* [1986–1987 Transfer Binder] No. 75–16, Comm. Fut. L. Rep. (CCH) ¶ 23,786, 1987 WL 106879, at *3, 1987 CFTC LEXIS 325, at *9 (CFTC July 15, 1987). It applied this test in DiPlacido's case.

DiPlacido argues that because "[e]veryone in the market has the ability to affect the market price," the Commission erred in not imposing a further market-control requirement. Appellant's Br. 35. Even supposing that all large traders in illiquid markets possess the ability to influence those markets, the Commission's inclusion of "the ability to influence the market price," rather than market control, as an element of manipulation is hardly arbitrary or capricious, as three other elements, including specific intent, must also be satisfied to establish liability. *Cf. Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (collecting

cases and recognizing that "constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea* "); *United States v. Curcio,* 712 F.2d 1532, 1543 (2d Cir.1983) (Friendly, J.) (same).

DiPlacido further challenges the Commission's standard on the ground that the elements of the four-part test "collapse[ ]" into one—uneconomic trading—so that a violation exists wherever bids and offers are violated, and even lawful hedging may constitute manipulation. Appellant's Br. 39. We are not persuaded. The Commission stated that "violating bids and offers—*in order to influence prices* " was "sufficient to show manipulative intent." *In re DiPlacido,* 2008 WL 4831204, at *26 (emphasis added). Its finding of intent thus depended not merely on DiPlacido's having violated bids and offers, but also on taped conversations signaling manipulative intent and the ALJ's finding that DiPlacido's denial of intent lacked credibility. Further, the Commission cited evidence (including expert testimony) that artificial prices were a "reasonably probable consequence" of DiPlacido's large trades made during the Close in an illiquid market. *Id.* at *32. Thus the Commission carefully applied all four elements of the traditional test, and DiPlacido's challenge to the reasonableness of the Commission's "new theory," Appellant's Br. 39, misses its mark.

### 3. *Weight of the Evidence*

 We reject DiPlacido's claim that the evidence does not support a finding of liability for manipulation.[2] The Commis-

**2.** DiPlacido offers no separate argument as to his liability for the offense of attempted manipulation, but instead relies on his argument with regard to manipulation. Thus, to the extent he has not abandoned the former claim, our conclusions apply to both. As for aiding and abetting liability, DiPlacido has not demonstrated that the Commission erred in determining that he waived direct appeal from the ALJ's finding on that issue. DiPlaci-

do's cursory treatment of aiding and abetting liability in his main brief does not mention the Commission's waiver finding, and while he insists in his reply that he has not waived any such claim, he is careful not to claim that he mentioned it in his briefing before the Commission. Nevertheless, we reach and reverse the Commission's decision on aiding and abetting liability. *See Anderson v. Bra-*

sion's findings of fact, "if supported by the weight of the evidence, shall ... be conclusive." 7 U.S.C. § 9. Our review of such findings is "narrow." *Reddy v. CFTC*, 191 F.3d 109, 117 (2d Cir.1999); *see also Haltmier v. CFTC*, 554 F.2d 556, 560 (2d Cir. 1977) (describing court's role as "something other than that of mechanically reweighing the evidence to ascertain in which direction it preponderates; it is rather to review the record with the purpose of determining whether the finder of the fact was justified, i.e. acted reasonably" (internal quotation marks omitted)).

 The Commission acted reasonably in concluding that DiPlacido had the ability to influence prices where, on the relevant dates, his trades over two minutes at the Close accounted for an average 14% of a full day's volume. Likewise reasonable was the determination that DiPlacido's trades established artificial prices, given that several witnesses testified that he violated bids and offers. *See In re Eisler*, No. 01–14, Comm. Fut. L. Rep. (CCH) ¶ 29,664, 2004 WL 77924, at *6, 2004 CFTC LEXIS 9, at *18 (CFTC Jan. 20, 2004) (discussing artificial prices). Finally, we detect no unreasonableness either in the Commission's intent finding, based in part on the referenced taped telephone calls, or in its reliance on expert testimony that DiPlacido's actions were a likely cause of artificial prices.

### 4. *Fair Hearing*

 DiPlacido has not shown that he did not receive "a fair trial, conducted in accordance with fundamental principles of fair play and applicable procedural standards established by law." *Lloyd Carr & Co. v. CFTC*, 567 F.2d 1193, 1196 (2d Cir.1977) (internal quotation marks omit-

ted). The transcript shows that the ALJ's handling of cross-examination, and his limitation of speculative and repetitive questioning, were within his "wide discretion." *Guttman v. CFTC*, 197 F.3d 33, 38 (2d Cir.1999). As the Commission observed, the tape recordings were authenticated by four witnesses with knowledge of their creation and preservation, satisfying the reliability requirement of applicable agency rules. *See* 17 C.F.R. § 10.67(a). Further, the incidents on which DiPlacido bases his allegations of bias do not nearly establish "pervasive bias" sufficient to have warranted disqualification or other relief. *Olson v. Ulmer*, [1990–1992 Transfer Binder] No. 87–R–46, Comm. Fut. L. Rep. (CCH) ¶ 24,-987, 1991 WL 83515, at *3, 1991 CFTC LEXIS 50, at *7–8 (CFTC Jan. 23, 1991).

### 5. *Sanctions*

 Finally, DiPlacido challenges the sanctions imposed on him. We review the imposition of sanctions for abuse of discretion. *Reddy v. CFTC*, 191 F.3d at 123. Abuse of discretion "[t]ypically ... will involve either a sanction palpably disproportionate to the violation or a failure to support the sanction chosen with a meaningful statement of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Id.* (quoting 5 U.S.C. § 557(c)(3)(A)).

On the whole, the Commission's decision demonstrates thoughtful consideration of the relationship between DiPlacido's conduct and the purposes of the statute, as well as the evidence that he knowingly participated in unlawful conduct, that he sought to conceal that conduct and obstruct investigators, and that the conduct

---

*nen*, 27 F.3d 29 (2d Cir.1994). DiPlacido should not have been charged as an accomplice and a principal for the same underlying conduct. *See United States v. Mucciante*, 21

F.3d 1228, 1234 (2d Cir.1994) (observing that federal aiding and abetting statute "does not penalize conduct apart from the substantive crime with which it is coupled").

recurred over a period of several months. It explains the basis for each of the sanctions imposed. None of its findings is disturbed by the delay in imposing a sanction, the fact that this was DiPlacido's first offense, or the transition to computerized trading. Nor is there any merit in DiPlacido's arguments that the Commission exceeded its discretion by fining him for after-hours trading even though NYMEX had also imposed a fine on that basis, by adjusting the sanction amount for inflation, or by imposing lesser penalties on co-defendants who settled.

However, the Commission did err by fining DiPlacido both for the substantive offense of manipulation and for aiding and abetting, where the underlying conduct was the same. As noted already, aiding and abetting "does not constitute a discrete ... offense"; rather, it is a theory of liability. *United States v. Smith,* 198 F.3d 377, 383 (2d Cir.1999). Thus we remit the civil penalty by $320,000, the amount imposed on the basis of aiding and abetting liability. In all other respects, we affirm the Commission's decision as to sanctions.

We have reviewed DiPlacido's remaining arguments and find them to be without merit. Accordingly, the petition for review is GRANTED, the Commission's decision is MODIFIED to reduce the civil penalty by $320,000, and the decision of the Commission as modified is AFFIRMED.